1  MICHAEL J. BETTINGER (State Bar No. 122196)
   RACHEL R. DAVIDSON (State Bar No. 215517)
2  PRESTON GATES & ELLIS LLP
   55 Second Street, Suite 1700
3  San Francisco, California  94105-3493
   Telephone:   (415) 882-8200
4  Facsimile:    (415) 882-8220

5  KARL J. QUACKENBUSH (*Admitted Pro Hac Vice*)
   JEFFREY C. JOHNSON (*Admitted Pro Hac Vice*))
6  PRESTON GATES & ELLIS LLP
   925 Fourth Avenue, Suite 2900
7  Seattle, Washington 98104-1158
   Telephone:  (206) 623-7580
8  Facsimile:  (206) 623-7022

9  Attorneys for Defendant
   MICROSOFT CORPORATION
10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN JOSE DIVISION**

14

15  GOOGLE, INC. and KAI-FU LEE,          Case No. C 05-03095 RMW

16                          Plaintiffs,   **MICROSOFT'S OPPOSITION TO
                                          PLAINTIFFS' MOTION FOR**
16                                        **SUMMARY JUDGMENT**
17        v.

18  MICROSOFT CORPORATION, and DOES 1     Date:   October 14, 2005
    through 20, inclusive,                Time:   9:00 a.m.
19                                        Place:  Courtroom 6
                            Defendants.   Hon.    Ronald M. Whyte
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT.................................................... 1

II.  STATEMENT OF RELEVANT FACTS ........................................................................ 2

   A.   Plaintiffs Have Actively Litigated This Case In the Washington
        Proceeding .......................................................................................................... 2

   B.   Judge Gonzalez Granted a Preliminary Injunction Against Plaintiffs
        in Washington ..................................................................................................... 4

   C.   Microsoft's Motion to Dismiss, Transfer, or Stay Plaintiffs' Declaratory
        Relief   Action Is Pending Before This Court ................................................... 5

III. WASHINGTON LAW GOVERNS THE ENFORCEABILITY OF DR. LEE'S ..................... 5

   A.   Plaintiffs Cannot Avoid the Application of Washington Law ................................ 6

   B.   California Does Not Have A Materially Greater Interest Than Washington .......................... 7

        1.   As The State Impacted By A Breach Of The Non-Compete Clause,
             Washington Has A Substantial Interest In This Case ........................................ 7

        2.   Plaintiffs' Argument That California Has A Greater Interest Than
             Washington Lacks Merit ................................................................................ 10

   C.   Applying Washington Law Would Not Violate California's Fundamental
        Public  Policy, Because Dr. Lee's Narrow Non-Compete Does Not Restrain
        Him From Working In An Entire Profession or Even from Working for Google ................. 12

   D.   Applying Washington Law Would Not Violate California's Fundamental
        Public Policy Because Dr. Lee's Narrow Non-Compete Is Enforceable To
        Protect Microsoft's Confidential and Trade Secret Information............................................ 15

IV.  CONCLUSION ...................................................................................................... 17

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abogados v. AT&T, Inc.,*
   223 F.3d 932 (9th Cir. 2000)..................................................................................... 6

*Application Group, Inc. v. Hunter Group, Inc.,*
   61 Cal.App.4th 881 (1998).................................................................................. 10, 11

*Boughton v. Socony Mobil Oil Co.,*
   231 Cal.App.2d 188 (1964)..................................................................................... 13

*Campbell v. Board of Trustees,*
   817 F.2d 499 (9th Cir. 1987).............................................................................. 13, 14

*Copier Specialists Inc. v. Gillen,*
   76 Wash.App. 771 (1995) ....................................................................................... 10

*D'SA v. Playhut Inc.,*
   85 Cal.App.4th 927 (2000)...................................................................................... 16

*Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.,*
   968 F.2d 1463 (1st Cir. 1992)............................................................................ 7, 8, 9

*General Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.,*
   126 F.3d 1131 (9th Cir. 1997)............................................................................ 13, 14

*Gordon v. Landau,*
   49 Cal.2d 690 (1958)............................................................................................... 15

*Hill Medical Corporation v. Wycoff,*
   86 Cal.App.4th 895 (2001)................................................................................. 15, 16

*IBM Corp. v. Bajorek,*
   191 F.3d 1033 ( 9th Cir. 1999)..................................................................... 2, 12, 14, 15

*Lowry Computer Products Inc. v. Head,*
   984 F. Supp. 1111 (E.D. Mich. 1997) ..................................................................... 15

*Manetti-Farrow, Inc., v. Gucci America, Inc.,*
   858 F.2d 509 (9th Cir. 1988).................................................................................... 5

*Metro Traffic Control, Inc. v. Shadow Traffic Network,*
   22 Cal.App.4th 853 (1994)...................................................................................... 15

*Muggill v. Reuben H. Donnelley Corp.,*
   62 Cal.2d 239 (1965)............................................................................................... 15

*Nedlloyd Lines B.V. v. The Superior Court of San Mateo County,*
   3 Cal 4th 459 (1992) ................................................................................................ 6

*O'Brien v. Shearson Hayden Stone, Inc.*,
  90 Wash.2d 680 (1978) ............................................................................................ 6

*Perry v. Moran*,
  109 Wash.2d 691 (1987) .......................................................................................... 10

*Roesgen v. American Home Products Corp.*,
  719 F.2d 319 (9th Cir. 1983) ................................................................................. 7, 8

*Shipley Co. v. Kozlowski*,
  926 F. Supp 28 (D. Mass 1996) ............................................................................... 15

*Smith v. CMTA-IAM Pension Trust*,
  654 F.2d 650 (9th Cir. 1981) .................................................................................. 14

*Thomas v. IMPAXXX, Inc.*,
  113 Cal.App.4th 1425 (2003) ............................................................................. 15, 16

*Whyte v. Schlage Lock Co.*,
  101 Cal.App.4th 1443 (2002) .................................................................................. 15

**STATUTES**

Business and Professions Code

Section 16600 ................................................................................................. passim

Section 16601 ..................................................................................................... 16

**OTHER AUTHORITIES**

Restatement Conflict of Laws

Section 187 ...................................................................................................... 6, 7

Section 187(b) ..................................................................................................... 7

Section 188 ........................................................................................................ 6

1    **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2          This declaratory judgment action filed by Kai-Fu Lee ("Dr. Lee") and Google, Inc.'s

3    ("Google") (Collectively "Plaintiffs"), involves the same parties, facts and issues of state law the

4    parties have already litigated in the first-filed parallel proceeding pending in Washington State court.

5    The Employment Agreement (the "Agreement") between Dr. Lee and Microsoft provides that it is

6    governed by Washington law and that exclusive venue and jurisdiction for any disputes arising from

7    the Agreement shall be in Washington.  The same Agreement is at issue here.

8          The Washington court has now made two substantive rulings against Plaintiffs after full

9    briefing and hearing and has entered other orders including an order setting an expedited trial date

10   and case schedule.  Not once during the Washington proceedings to date did Plaintiffs argue or even

11   suggest that California law should apply or that California jurisdiction and venue was required.

12   Unhappy with the rulings of the Washington court, Plaintiffs seek to relitigate those issues here in

13   hopes of a different result.

14         On September 13, after a two-day evidentiary hearing requested by Plaintiffs, Judge

15   Gonzalez of the King County Superior Court entered a Preliminary Injunction ordering Dr. Lee and

16   Google not to violate the provisions of the Agreement.  Judge Gonzalez's Preliminary Injunction

17   <u>does not</u> prohibit Dr. Lee from working for Google, and, contrary to Plaintiffs' misrepresentation

18   here, Microsoft never contended that it should.  Rather, it restrains Dr. Lee and Google from

19   misusing Microsoft's confidential information and restrains Dr. Lee from working in areas

20   competitive with those he worked in at Microsoft, and about which he learned confidential or

21   proprietary or trade secret information.

22         In an effort to interfere with the Washington action, avoid the agreed-upon choice of

23   Washington law, and evade the exclusive venue provisions of Dr. Lee's Agreement with Microsoft,

24   Plaintiffs filed this declaratory relief action and the present summary judgment motion.  In their

25   motion, Plaintiffs take the position that California law applies to Dr. Lee's non-competition

26   obligations under his Agreement, and that such obligations violate California law.  Plaintiffs'

27   Summary Judgment motion should be denied.

28

First, it is undisputed that under the terms of the Agreement Dr. Lee agreed to exclusive venue in Washington and the application of Washington law.  Second, Washington uses the same conflict of law principles adopted in California, yet Plaintiffs never raised California law in the Washington action and asked Judge Gonzalez to consider these matters.  As such, Plaintiffs should be precluded from raising a conflict of law issue now.  Third, Dr. Lee's Agreement with Microsoft has been construed and enforced through trial by Judge Gonzalez.  Fourth, even if this Court ignored Dr. Lee's Agreement and applied California law, Dr. Lee's non-compete obligations are enforceable.  Under California law, non-competition agreements are enforceable where they do not completely prohibit one from working in one's profession, or where they are necessary to protect an employer's trade secrets.  Both conditions are met in this case as reflected in Judge Gonzalez's September 13 Preliminary Injunction Order.  By Dr. Lee's own admission, the narrow non-compete obligations in the Agreement, as construed by Judge Gonzalez, do not stop him from working in his profession or working for Google.

Contrary to Plaintiffs' representations here, the Agreement by its terms does not prohibit Dr. Lee from working for a competitor; rather, it only restricts him from working for a competitor, for one year, in the same areas where he worked for Microsoft or in areas about which he possesses Microsoft's confidential information.  In fact, Dr. Lee's non-compete obligations are narrower than the non-compete agreement upheld by the Ninth Circuit in *Bajorek*.  Dr. Lee's non-compete obligations are equally enforceable under California law, because these obligations are narrowly tailored and necessary to protect Microsoft's confidential information and trade secrets.

Plaintiffs' declaratory judgment action is forum shopping, and the present motion is nothing more than an attempt to undo the orders entered to date in the litigation in Washington State.  As a matter of law, the motion should be denied.

## II.     STATEMENT OF RELEVANT FACTS

### A.     Plaintiffs Have Actively Litigated This Case In the Washington Proceeding.

Plaintiffs have been actively litigating the Washington case, arguing that Washington law applies in the King County Superior Court in Seattle.  In the Washington action, Plaintiffs never disputed jurisdiction in King County and did not contend that California law was controlling.  In

1  fact, Plaintiffs never informed Judge Gonzalez about the pendency of this motion seeking to

2  impose California law and jurisdiction until Microsoft raised it.

3        The Washington state court action was commenced on July 18, 2005.  On July 26, Judge

4  Gonzalez heard Microsoft's Motion for Temporary Restraining Order.  All parties submitted briefs

5  for this motion and all parties were represented by counsel at the hearing.  *Declaration of Michael J.*

6  *Bettinger* ("*Bettinger Decl.*"), Tabs A & B.

7        Microsoft's TRO motion was granted on July 28.  *See*, *Declaration of Michael J. Bettinger in*

8  *Support of Microsoft's Motion to Dismiss, Transfer or Stay, filed September 9, 2005*, Exh. 3.

9  (Docket # 23).  The Court set an expedited trial date of January 9, 2006 and set a Case Schedule

10  based on that date.  *Id.*, Exh. 4.  The Court set Microsoft's Motion for Preliminary Injunction for

11  September 6 and ordered expedited discovery in advance of that hearing.  *Id.*  The Court appointed a

12  Special Master to resolve discovery disputes on an expedited basis.  *Id.*, Exh. 5.  Certain media,

13  entities including The Seattle Times and the Seattle Post-Intelligencer, moved to intervene in the

14  Washington case for purposes of challenging any decision by the parties to file papers under seal.

15  That motion was granted.  *Id.,* Exh. 6.  The Court also granted an agreed motion by Plaintiffs and

16  Microsoft to establish a procedure for filing papers under seal, with redacted versions of those papers

17  provided to the media and a process for resolving any objections to those redactions by the media

18  intervenors.  *Bettinger Decl.*, Tab C.

19        The parties engaged in extensive expedited discovery, including interrogatories, substantial

20  document production and depositions.  A total 14 depositions were taken before the preliminary

21  injunction hearing, including the C.E.O.'s of Google and Microsoft.  Microsoft produced the

22  electronic equivalent of more than 200,000 pages of documents to Dr. Lee and Google.  On August

23  19, Dr. Lee filed a motion, joined by Google on August 22, requesting that the preliminary

24  injunction hearing be expanded to an evidentiary hearing with live testimony.  *Bettinger Decl.*, Tabs

25  D & E.  This motion was granted.  Google also brought a motion seeking an order dissolving the

26  July 28 temporary restraining order.  *Id.*, Tab F.

27

28

**B.      Judge Gonzalez Granted a Preliminary Injunction Against Plaintiffs in Washington.**

The preliminary injunction hearing was held September 6 and 7. Both Google and Dr. Lee were represented by separate counsel and fully participated in the hearing. Dr. Lee testified at the hearing, as did Alan Eustace, Google's Vice President of Engineering, and both parties offered testimony through depositions previously taken. Google and Dr. Lee submitted briefs and declarations in advance of the hearing, both arguing that there was no basis for an injunction. Neither the briefs submitted by Google and Dr. Lee nor their arguments during the hearing on the preliminary injunction suggested that Judge Gonzalez ought to apply California law or that jurisdiction did not properly rest with the King County Superior Court. *Bettinger Decl*., Tab G.

The Court granted Microsoft's motion for preliminary injunction on September 13. *Id.*, Tab H. The Court dismissed Google's motion to dissolve the temporary restraining order as moot. *Id*., Tab I, *9/13/05 Transcript of Preliminary Injunction Hearing,* p. 9:22-25. The injunction entered is effective through trial in January 2006. The preliminary injunction does not prohibit Dr. Lee from working for Google, and Microsoft never suggested that it should. Rather, it restrains Dr. Lee and Google from misusing Microsoft's confidential information and from working in areas competitive with those he worked in at Microsoft and about which he learned confidential information. *Id.* In granting Microsoft's preliminary injunction, Judge Gonzalez specifically found that Microsoft demonstrated a well-grounded fear that Dr. Lee has violated or threatens to violate his non-disclosure obligations to Microsoft, and that the restraints against Dr. Lee's future employment contained in paragraph 9 of the Agreement "are no greater than reasonably necessary to protect Microsoft's legitimate business interests." *Id*. at pp. 9-10, ¶¶ 1-6. After hearing Dr. Lee's testimony, the Court further found that Dr. Lee had misled Microsoft and that he confused his obligation to use Microsoft's confidential information for Microsoft's benefit and not for the benefit of Google. *Id*. at pp. 7-8, ¶ 4; Tab I, *9/13/05 Transcript* p. 5:06-19. Microsoft's preliminary injunction against Plaintiffs will remain in effect until the expedited trial date set for January 9, 2006. *Id*. at p. 11.

1
2

**C.      Microsoft's Motion to Dismiss, Transfer, or Stay Plaintiffs' Declaratory Relief Action Is Pending Before This Court.**

3      On September 9, 2005, Microsoft filed a motion with this Court seeking to have this

4   action dismissed, transferred or stayed pending completion of Microsoft's Washington state

5   court action.  Microsoft's Motion centers on the following key facts:  (1) a parallel proceeding

6   involving the same parties and identical factual and legal issues is already well underway in

7   Washington; and (2) the Agreement at issue in the present case requires that this action be

8   brought and litigated in Washington.  That motion is also noticed for hearing on October 14.

9   Since Microsoft's Motion raises the fundamental question of whether this action is properly

10   filed, and should be allowed to proceed in this Court, that motion should be considered and ruled

11   on prior to Plaintiffs' summary judgment motion.  Microsoft's Motion to dismiss, transfer or stay

12   may render Plaintiffs' present motion moot.

13   **III.     WASHINGTON LAW GOVERNS THE ENFORCEABILITY OF DR. LEE'S NON-COMPETITION OBLIGATIONS**
14

15      Dr. Lee agreed that any dispute relating to his Agreement would be heard exclusively in

16   King County, Washington and governed by Washington law[1]:

17      I [Dr. Lee] agree that this Agreement shall be governed for all purposes by the laws
       of the State of Washington as such laws apply to contracts performed within
18       Washington by its residents and that exclusive venue and exclusive personal
       jurisdiction for any action arising out of this Agreement shall lie in state or federal
19       court located in King County, Washington.

20      In the Washington case, Plaintiffs do not contest that Washington has exclusive

21   jurisdiction over the parties and that Washington law governs the Agreement.[2]  In an effort,

22   however, to avoid the agreed upon choice of Washington law and evade the exclusive venue

23   clause in the Agreement, Plaintiffs have filed this declaratory judgment action.  Plaintiffs seek a

24   declaration that three contractual provisions voluntarily entered into by Dr. Lee are void: (a) the

25

26   [1] Google bears a sufficiently close relationship with the Agreement such that the forum selection clause applies to it.
   Forum selection clauses apply not just to signatories, but to related parties as well:  "a range of transaction participants,
   parties and non-parties, should benefit from and be subject to forum selection clauses."  *Manetti-Farrow, Inc., v. Gucci*
27   *America, Inc.*, 858 F.2d 509, 512-13 (9th Cir. 1988).
   [2] Plaintiffs should be precluded from taking inconsistent positions on choice of law since the Washington and California
28   actions involve the exact same Agreement.

exclusive venue clause; (b) the Washington choice of law clause; and (c) the limited non-competition clause.  Plaintiffs' transparent attempt to escape Dr. Lee's freely agreed contractual promises to Microsoft should be rejected.

### A.    Plaintiffs Cannot Avoid the Application of Washington Law.

California choice of law rules apply in this diversity action.  *Abogados v. AT&T, Inc.*, 223 F.3d 932 (9th Cir. 2000).  California applies the Restatement (Second) Conflict of laws Section 187 for determining the enforceability of contractual choice-of-law provisions.  *Nedlloyd Lines B.V. v. The Superior Court of San Mateo County*, 3 Cal 4th 459, 465 (1992).  Section 187 provides, in relevant part:

> (2) The laws of the state chosen by the parties to govern their contractual rights and duties will be applied,…unless…(b) application of the law of the chosen state would be contrary to a fundamental policy of the state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Section188[3], would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) Conflict of laws Section 187.  This is the identical standard applicable under Washington law for determining the enforceability of contractual choice-of-law provisions.  *O'Brien v. Shearson Hayden Stone, Inc.*, 90 Wash.2d 680, 682 (1978).  Importantly, the fact that Washington and California apply the identical choice of law standard highlights that Plaintiffs are forum shopping here because the conflict of law arguments they make to this Court would be the same had they chosen to make them in Washington.

The first and most important factor for determination under the Restatement test is whether the state chosen by the parties to the contract has a "substantial relationship" to the parties and the transaction, or there is some other "reasonable basis for the choice."  *Nedlloyd Lines B.V.*, 3 Cal 4th at 466.  This requirement is met here because the Agreement was negotiated, entered into and performed for five years in Washington.  The benefits provided to Dr. Lee under the Agreement

---

[3]  Restatement Section 188 requires the Court to determine which state has the "most significant relationship to the transaction and the parties[.]"  Restatement Section 188.  Five elements are considered: (i) the place of contracting, (ii) the place of negotiation of the contract, (iii) the place of performance, (iv) the location of the subject matter of the contract, and (v) the domicile, residence, nationality, place of incorporation and place of business of the parties.  These elements all favor application of Washington law.

1   were conferred in Washington, Dr. Lee was a resident of Washington while performing the

2   Agreement, and Microsoft is a Washington corporation.  Indeed, Plaintiffs do not dispute, nor

3   could they, that Washington has a substantial relationship to the parties and the transaction.

4     The next question is whether Washington's law is contrary to a fundamental policy of

5   California.  *Id.* at 466.  If it is not, Washington law will be applied.  *Id.*  Even if it is, Washington

6   law still applies unless California has a materially greater interest than Washington in the

7   determination of the issue at hand.  *Id.*  If not, then under Section 187(b) of the Restatement,

8   Washington law applies, even if it violates California's fundamental public policy.  Restatement

9   (Second) Conflict of laws Section 187(b).  Here, the application of Washington law in does not

10  violate California's fundamental public policy, and, in any event, California cannot have a

11  materially greater interest than Washington in the determination of the terms of a contract entered

12  into in Washington between residents of Washington and performed for five years within

13  Washington.

14    **B. California Does Not Have A Materially Greater Interest Than Washington.**

15    Even if Washington law regarding the enforceability of Dr. Lee's non-competition

16  obligations did violate California public policy (which it does not), Washington law would apply

17  because California does not have a materially greater interest than Washington in resolution of

18  this issue.

19    **1. As The State Impacted By A Breach Of The Non-Compete Clause,**
20      **Washington Has A Substantial Interest In This Case.**

21    Here, Plaintiffs do not dispute that the Agreement was entered into and performed in

22  Washington.  The benefits provided to Dr. Lee under the Agreement were conferred in

23  Washington and Dr. Lee was a resident of Washington while performing the Agreement and

24  Microsoft is a Washington Corporation.[4]  These facts are identical to those in *Roesgen v.*

25  *American Home Products Corp.,* 719 F.2d 319 (9th Cir. 1983), and *Ferrofluidics Corp. v.*

26  *Advanced Vacuum Components, Inc.,* 968 F.2d 1463 (1st Cir. 1992), two cases that illustrate the

27  paramount interests of the state whose law has been chosen by the parties to govern their

---

28  [4] Dr. Lee was a Vice President of Microsoft and was compensated at a high level.

1   contractual rights and duties.  In both cases, the Court rejected the application of California law.

2   In fact, the grounds for rejecting application of California law in this case are more compelling

3   than in *Roesgen*, where the parties' agreement did not, as here, have a mandatory venue and

4   choice of law provision.  The *Roesgen* court recognized that "[i]f the Court had applied California

5   law instead, it would have invited forum shopping, since any New York employee would be able

6   to escape New York law by moving to California."  The same is true here.  If this Court applies

7   California law, it would be condoning forum shopping, as well as encouraging parties to evade

8   their contractual obligations.

9       In *Roesgen*, the Ninth Circuit upheld application of New York law to a forfeiture provision

10  in a stock plan.  *Id*. at 320.  The stock plan included a provision that if appellants were to accept

11  employment with a competitor, they would forfeit all their rights to their stock.  *Id.*  After

12  appellants left American Home Products to work for California competitors, they brought suit to

13  invalidate the forfeiture provision under Section 16600.  *Id.*  In determining whether New York or

14  California law applied, the Ninth Circuit considered which state would be more impaired if the

15  other's law was applied.  *Id.* at 320-321.  The Court found that New York would be more

16  impaired by application of California law than would California by the application of New York

17  law.  *Id.* at 321.  The Court found that New York had a strong interest in protecting freedom of

18  contract and that this interest would be impaired if the parties' expectations as expressed in the

19  contract were not met.  *Id*.  Since the appellants joined the stock plan when they were New York

20  residents working in New York, their expectation was that New York law would apply.  *Id*  The

21  Court made clear that had it applied California law instead, it would have invited forum shopping,

22  since any New York employee would be able to escape New York law by moving to California.

23  *Id*.

24      *Ferrofluidics* is also directly on point.  In *Ferrofluidics* the First Circuit held that California

25  did not have a greater interest over New Hampshire in having its law apply where all the operative

26  events between the parties occurred in New Hampshire.[5]  *Id.* at 1468.  The Court refused to apply

27  ---
[5] In *Ferrofluidics*, the non-compete agreements at issue contained a choice of law provision designating Massachusetts
28  as the governing law.  The defendant employees argued that New Hampshire rather than Massachusetts law applied
despite the parties' choice of law clause designating Massachusetts law.  The lower court held that New Hampshire law

California law where the parties had no expectation when they entered into their employment agreement that California law would apply. *Id.* In *Ferrofluidics*, defendant employees executed an Agreement with Ferrofluidics which included a covenant not to compete with the company for five years upon termination of their employment. *Id.* at 1465-6. Defendants left Ferrofluidics to form a competing company in California. *Id.* Defendants then brought a declaratory relief action in California federal court seeking to invalidate their non-competition agreements under California law. *Id.* at 1466. Ferrofluidics subsequently filed suit in federal court in New Hampshire. *Id.* The First Circuit rejected defendants' argument that California, rather than New Hampshire had a materially greater interest in the case than New Hampshire. *Id.* at 1468:

> Viewed in the best light, the defendants' argument is that since Sickles *presently* lives and works there, California has an interest in how its rights are interpreted and enforced. Quite true, but of course such an interest hardly suggests that California had a more significant relationship than New Hampshire with an employment contract performed in New Hampshire by a New Hampshire employer and a New Hampshire employee throughout the employment period. (emphasis in original).

*Id.* at 1468.

The *Ferrofluidics* Court found that the defendant employees had no reasonably justifiable expectation when they entered into their employment agreement in New Hampshire that their agreement would be governed by California law, as California bore no relationship to the contract at the time, and continued to have none until they breached the restrictive covenant there. *Id.* Accordingly, the Court refused to apply California law in deciding the enforceability of the covenant not to compete. *Id.*

In this case, there is no question that Washington has a strong interest in ensuring its residents' agreements to select Washington law will be honored by other states. While California may have an interest in regulating in-state competition, Washington has an equally strong interest in protecting Washington businesses from breaches of employment agreements and consequent

---

applied because it had a more significant relationship to the parties and transaction. *Id.* at 1467-8. The First Circuit indicated that although the lower court's decisions to apply New Hampshire law rather than enforce the contractual choice of Massachusetts' law, may have been an error, it need not determine the issue since Massachusetts and New Hampshire's law on restrictive covenants lead to the same result. *Id.*

loss of good will, confidential and trade secret information.  *Perry v. Moran*, 109 Wash.2d 691, 700-01 (1987) ( observing that a covenant not to compete is an inherently reasonable way for an employer to protect himself against defecting employees who might otherwise take advantage of information obtained from the employer).  Indeed, reasonable non-compete clauses, such as the one here, promote the exchange of sensitive, but essential, information to employees.  *See, Copier Specialists Inc. v. Gillen,* 76 Wash.App. 771, 774 (1995) (non-compete agreements are useful and beneficial because they allow employers to share confidential information with employees without unknowingly advancing the interests of competitors or would-be competitors.)  Permitting former Washington employees to breach such clauses with impunity would hinder this exchange of information, causing companies to be less innovative, efficient and successful.

### 2.   Plaintiffs' Argument That California Has A Greater Interest Than Washington Lacks Merit.

Plaintiffs rely heavily on *Application Group, Inc. v. Hunter Group, Inc.,* 61 Cal.App.4th 881 (1998), to argue that California's interest in upholding its public policy regarding non-compete clauses trumps any interest that Washington may have in this matter.  *Application Group* is different from the present case in several key respects and does not support Plaintiffs here.

First, the non-compete clause at issue in *Application Group* was much broader than that contained in Dr. Lee's Agreement.  The *Application Group* clause prevented a computer consultant, Dianne Pike, from rendering "any services of an advisory or consulting nature, whether as an employee or otherwise, to any business which is a competitor of [Hunter]." *Id*. at 887.  The clause thus precluded Pike from practicing her profession as a whole -- computer consulting -- with any of Hunter's competitors, including Application Group, Inc. ("AGI").  If enforced, the clause would have prevented Pike from working for AGI altogether.

Here, by contrast, the non-compete clause merely restricts Dr. Lee, for one year, from working in the same areas in which he worked for Microsoft.  It does not restrict Dr. Lee from working in any profession as a whole, or from working for competitors including Google.  Indeed, Google has hired Dr. Lee and Dr. Lee has commenced working for Google.  Dr. Lee has admitted that the Agreement does not restrain him from working for Google.  In comments to the press after

1   Judge Gonzalez's September 13 ruling, Dr. Lee stated: "It allows me to do my job.  I'm going to

2   walk into Google and start work."  *Bettinger Decl.*, Tab J.  Thus, the two non-compete clauses are

3   fundamentally different.

4          Second, in *Application Group*, Hunter admitted that the very purpose of its non-compete

5   clause was to "scare away" competitors seeking to hire its employees.  *Id.* at 888.  Therefore, the

6   court found that Hunter's non-compete clause, *by design*, violated California's policy of "protecting

7   the freedom of movement of persons whom California-based employers…wish to employ."  *Id.* at

8   900.  In making this finding, the court noted that Hunter made no showing that the non-compete

9   clause served to protect Hunter's trade secrets or protected information.  *Id.* at 902.[6]

10          Here, by contrast, the purpose of Microsoft's non-compete clause is to protect Microsoft's

11   trade secrets and proprietary information.  This aim is clearly reflected in the language of the non-

12   compete clause itself, which, again, is limited to the areas in which Dr. Lee worked for Microsoft or

13   about which he obtained Microsoft's confidential information.  Unlike in *Application Group*, the

14   non-compete clause in Dr. Lee's Agreement does not restrict him from working for competitors or

15   from engaging in his profession.[7]  Not only does the Microsoft non-compete clause not violate

16   California's policy of protecting freedom of movement, but it also falls squarely within a recognized

17   basis under California law for enforcing non-compete clauses: the protection of trade secrets.  *See,*

18   Section D, below.

19          For these reasons, Plaintiffs' arguments summarily dismissing Washington's interests in this

20   case fail.  Even if, however, there was a legitimate basis for claiming California has a more

21   significant interest than Washington in Dr. Lee's Agreement entered into and performed in

22   Washington, summary judgment would still be inappropriate because at a minimum there are

23

24   [6] In fact, the *Application Group* court found that Hunter did not present "any theory" by which its non-compete clause
     would survive if California law were to apply.  Rather, Hunter solely argued the clause is enforceable under Maryland
     law.  *Id.* at 895-896.

25   [7] In granting Microsoft's Preliminary Injunction, Judge Gonzalez found that during his employment with Microsoft, Dr.
     Lee worked on products, services or projects (including actual and demonstrably anticipated research or development)

26   and/or received Microsoft confidential, proprietary or trade secret information in areas of computer search, including but
     not limited to internet search, desktop search, mobile search, and natural language processing and speech technologies.

27   *Bettinger Decl.*, Tab H, p. 8 ¶ 5. Judge Gonzalez found that the restraints against Dr. Lee's future employment contained
     in paragraph 9 of the Agreement "are no greater than reasonably necessary to protect Microsoft's legitimate business

28   interests."  *Id.*  p. 10 ¶ 3.

disputed issues of material fact regarding whether application of Washington law would violate a

fundamental public policy of California.

   **C.   Applying Washington Law Would Not Violate California's Fundamental Public Policy, Because Dr. Lee's Narrow Non-Compete Does Not Restrain Him From Working In An Entire Profession or Even from Working for Google.**

   As a condition of employment and in consideration for his compensation, Dr. Lee signed the

Agreement containing the following narrowly-drawn non-competition obligation.  Dr. Lee promised

that:

> [W]hile employed at Microsoft and for a period of one year thereafter, I will not: (a) accept employment or engage in activities competitive with products, services or projects (including actual or demonstrably anticipated research or development) on which I worked or about which I learned confidential or proprietary information or trade secrets while employed at MICROSOFT[.]

   Under the Agreement with Microsoft, Dr. Lee is <u>not</u> completely restrained from a

profession, or  from working for a competitor; rather, he is only restricted from working for a

competitor, for one year, in the same areas where he worked for Microsoft or learned confidential

or proprietary information or trade secrets.  Under California law, non-compete clauses are valid so

long as they do not "completely restrain" one from pursuing one's profession.

   The case of *IBM Corp. v. Bajorek,* 191 F.3d 1033 ( 9th Cir. 1999) is directly on point.

There, the Ninth Circuit enforced a contractual choice of New York law against a California

employee, and rejected the argument that doing so violated California's public policy against

covenants not to compete.  *Id.* at 1040-42.  The non-competition clause at issue in *Bajorek* provided

that the "Participant shall not render services for any organization or engage directly or indirectly in

any business…competitive with the Company…" for six months after exercising his stock options,

or he would forfeit the profits.  *Id.* at 1440.  After Bajorek exercised more than $900,000 worth of

options, he went to work for a competitor.[8]  *Id.* at 1036-7.  Subsequently, Bajorek brought suit

against his former employer, IBM, in California for a declaratory judgment that the non-compete

clause was invalid under Section 16600.  *Id.*  The Court found that application of New York law

---

[8] In *Bajorek*, the Court noted that the employee had received substantial stock options for executing the agreement containing the non-compete. *Bajorek*, 191 F.3d at 1041.  Dr. Lee was also well compensated in consideration for his non-compete obligations to Microsoft.

1  would not violate a fundamental policy of California.  It held that Section 16600 does not make all

2  restrictions on competition unlawful, but only bars non-competes that completely restrain one from

3  engaging in an entire business, trade or profession.  *Id.* at 1040 (citing, *General Commercial*, 126

4  F.3d 1131, 1132-33 and *Campbell*, 817 F.2d at 502).  Because the non-compete at issue in *Bajorek*

5  did not completely restrain the employee from engaging in an entire business, trade or profession,

6  the Court held that California's policy reflected in Section 16600 was not violated by applying New

7  York law.  *Id.* at 1040-42.

8       Similarly, in *Campbell v. Board of Trustees*, 817 F.2d 499 (9th Cir. 1987), the Court

9  affirmed that "where one is barred from pursuing only a small or limited part of the business, trade

10 or profession, the contract has been upheld as valid."  *Id.* at 502 (quoting *Boughton v. Socony Mobil*

11 *Oil Co.*, 231 Cal.App.2d 188, 192 (1964)).  The *Campbell* court held there was a triable issue of

12 fact as to whether a covenant that prohibited an ex-employee (a testing psychologist) from

13 preparing tests for competitors amounted to a proscription of the employee's "entire profession,

14 trade or business," and thus was void.  *Campbell*, 817 F.2d at 503.  There is no such issue here.  If

15 there was, however, *Campbell* dictates that, at a minimum, there would be a triable issue of fact

16 concerning the scope of Dr. Lee's non-compete obligations.  Accordingly, as in *Campbell*,

17 Plaintiffs' summary judgment motion should be denied.

18      The Ninth Circuit followed *Campbell's* rationale in *General Commercial Packaging, Inc. v.*

19 *TPS Package Eng'g, Inc.*, 126 F.3d 1131, 1132-34 (9th Cir. 1997) and held that Section 16600 does

20 not invalidate a non-compete agreement unless it entirely precludes a party from pursuing its trade

21 or business. *Id.*  In *General Commercial*, a former executive was precluded for a limited period of

22 time from engaging in business endeavors with listed competitors if the endeavors were in

23 competition with the employer.  *Id.*  This protection was independent of intellectual property

24 protections.  *Id.*  The Court upheld the validity of a contract provision that precluded the defendant

25 from performing services for one year for companies to which the plaintiff had introduced the

26 defendant, because defendant was not altogether precluded from "engaging in the crating and

27 packing business."  *Id.* at 1134.  Rather, defendant was only precluded from competing in a narrow

28

1   segment of the packing and shipping market.  *Id.* at 1134; *See also*, *Smith v. CMTA-IAM Pension*

2   *Trust,* 654 F.2d 650 (9th Cir. 1981).

3          Plaintiffs' attempt to distinguish *Bajorek ,Campbell, General Commercial,* and *Smith* on

4   the ground that these cases do not involve employment agreements should be rejected.  In all of

5   these cases, the Court analyzed whether a particular non-compete provision was enforceable under

6   Section 16600.  The fact that a non-compete provision is part of a stock option agreement, a

7   pension plan or a license agreement, rather than an employment agreement, does not affect the

8   analysis of whether the provision is valid and enforceable.  As was the case in *Bajorek*, *Campbell,*

9   *and General Commercial*, the non-compete clause here does not completely restrain Dr. Lee from

10  his profession, or even from working for a competitor; rather, it only restricts him from working

11  for a competitor, for one year, in the same areas where he worked for Microsoft or learned

12  confidential or proprietary information or trade secrets.  Dr. Lee's non-compete clause is in fact

13  narrower than the non-compete clause in *Bajorek*.  Dr. Lee's non-compete obligations restrict him

14  for one year from activities competitive with "products, services or projects…on which [he]

15  worked or about which [he] learned confidential or proprietary information or trade secrets while

16  employed at MICROSOFT."  Whereas, the non-compete clause in *Bajorek* which the court held

17  was <u>valid and enforceable</u>, provided that: "a participant shall not render services for any

18  organization or engage directly or indirectly in any business competitive with the Company."

19  *Bajorek*, 191 F.3d at 1040.  Unlike *Bajorek*, Dr. Lee is not prevented from working for

20  competitors altogether, or even from working for Google, but simply from working in the same

21  specific areas he worked on or learned about at Microsoft.  Indeed, there are a vast number of

22  positions with Microsoft's direct competitors that Dr. Lee could undertake without violating his

23  Agreement.  Since the non-compete clause is valid and enforceable under California law,

24  Plaintiffs' public policy argument must fail.

25

26

27

28

**D.    Applying Washington Law Would Not Violate California's Fundamental Public Policy Because Dr. Lee's Narrow Non-Compete Is Enforceable To Protect Microsoft's Confidential and Trade Secret Information.**

California public policy is also not violated by the enforcement of Dr. Lee's non-competition obligations because these obligations are necessary to protect Microsoft's confidential information and trade secrets.  For decades it has been the law in California that non-competition contracts are enforceable where they are necessary to protect confidential information and trade secrets.  *Muggill v. Reuben H. Donnelley Corp*., 62 Cal.2d 239 (1965); *See also, Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853 (1994); *Gordon v. Landau,* 49 Cal.2d 690, 694 (1958); *See also, Lowry Computer Products Inc. v. Head*, 984 F. Supp. 1111, 1114 (E.D. Mich. 1997) (application of Michigan non-compete law did not violate California fundamental policy because California allows enforcement of non-competes to protect trade secrets); *Shipley Co. v. Kozlowski*, 926 F. Supp 28, 30 (D. Mass 1996) ( application of Massachusetts non-compete law did not violate California fundamental policy because California allows enforcement of non-competes to protect trade secrets.)

Plaintiffs claim that cases since *Bajorek*, specifically, *Whyte*, *D'Sa*, *Thomas*, and *Hill* have "reconfirmed that all restraints on an employee engaging in a profession are void." *See*, Plaintiff's Summary Judgment Motion, p. 17. (emphasis in original).  Plaintiffs misread the law.  In fact, those cases actually confirm that non-competition obligations are enforceable where they are necessary to protect confidential information and trade secrets.  These cases are also otherwise distinguishable.

In *Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443, 1462 (2002), for example, the Court reaffirmed that "[n]early 40 years ago the Supreme Court recognized that covenants not to compete are enforceable notwithstanding Business and Professions Code Section 16600 if necessary to protect employer's trade secrets." *Id*.  Moreover, the *Whyte* Court did not address whether a covenant not to compete violated Section 16600. *Id.* at 1464.  In fact, the parties in *Whyte* never agreed on a covenant not to compete at all. *Id*. at 1464-5.  The *Whyte* Court simply held that the inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets. *Id.*  The Court made clear that its holding did not change the law

1    that "…[a]n employer might prevent disclosure of trade secrets through, for example, an agreed-

2    upon and reasonable nonsolicitation clause that it narrowly drafted for the purpose of protecting

3    trade secrets." *Id.* at 1464-5.

4        Similarly, the *D'SA v. Playhut Inc.*, 85 Cal.App.4th 927 (2000), *Thomas v. IMPAXXX, Inc.,*

5    113 Cal.App.4th 1425 (2003) and *Hill Medical Corporation v. Wycoff,* 86 Cal.App.4th 895 (2001)

6    cases do not, as Plaintiffs claim, hold that <u>all</u> non-competition agreements are void under California

7    law.  The *D'SA* Court clearly acknowledged the well-settled rule that a covenant not to compete

8    will not be viewed as a violation of 16600 if it is "necessary to protect the employer's trade

9    secrets." *Id.* at 935.  Moreover, the *Thomas* Court simply found that the particular non-solicitation

10   agreement at issue was not legitimately tied to protecting confidential information. *Id.* at 1429-31.

11   It did not hold, as Plaintiffs suggest, that all non-competition agreements are void under California

12   law.  Also, significant, the *D'SA* and *Thomas* decisions addressed a very different set of facts than

13   those present in the case at bar.  At issue in these cases was whether an employee can lawfully be

14   terminated for refusing to sign a non-competition and non-solicitation agreement. *D'SA,* 85

15   Cal.App.4th at 931-2; *Thomas*) 113 Cal.App.4th at 1428-9.  In the instant case, Dr. Lee freely agreed

16   to, and was well compensated in consideration for his non-compete Agreement with Microsoft.

17   Lastly, in *Hill,* the Court addressed a non-compete provision which barred a former employee upon

18   a "buyout event" from practicing radiology within a seven and one half mile radius of his former

19   employer for <u>three years.</u>  *Hill,* 86 Cal.App.4th at 989.  (emphasis added).  The Court did not hold,

20   as Plaintiffs claim, that all non-competition agreements are void in California.  In fact, the Court

21   did not address whether a non-compete drafted to protect confidential information or trade secrets

22   is enforceable under California law.  At issue in *Hill* was whether defendant's non-compete clause

23   was valid under California Business and Profession Code Section 16601 (exception allowing a

24   covenant not to compete in connection with sale of goodwill of a business). *Id.* at 901-904.  The

25   *Hill* Court found that the non-compete provision was invalid because defendant was not originally

26   compensated for goodwill of the company. *Id.* at 908.

27        Here, Dr. Lee's non-compete obligations are narrowly drawn and serve the legitimate

28   purpose of ensuring that Microsoft's confidential information imparted is not used in competition

with Microsoft.  Not only did Microsoft give Dr. Lee access to its proprietary and confidential plans and strategies, it allowed Dr. Lee access to its most valuable trade secrets, including technical architecture and specifications for its search engine technologies and future plans.  The scope of the non-compete provision agreed to by Dr. Lee is quite narrow, applying to defined competitive activities and continuing for only one year after termination of employment.  The non-compete is narrowly crafted and specifically tied to protecting Microsoft's trade secrets.  Judge Gonzalez's injunction was based in part on his determination that Dr. Lee had misled Microsoft about his intention to return to work for the company following his sabbatical, that he began assisting Microsoft's competitor Google while still working for Microsoft, and that he "confused the difference between the discretion given him to disclose Microsoft's confidential information for benefit of Microsoft and disclosing Microsoft's confidential information for his own benefit or the benefit of another."  *Bettinger Decl*., Tab H, pp. 7-8, ¶¶ 3-4; Tab I, *9/13/05 Transcript* p. 5:06-19.  Dr. Lee's non-competition obligations protect and enable fair competition by protecting Microsoft's confidential information, especially where there is a demonstrated propensity by Dr. Lee to misuse that information.

## IV.     CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for summary judgment should be denied.


DATED:  September 23, 2005                          PRESTON GATES & ELLIS LLP



                                                    By/s/ *Michael J. Bettinger*
                                                        Michael J. Bettinger
                                                        Attorneys for Defendant
                                                        Microsoft Corporation