Honorable Steven Gonzalez
Hearing Date: July 27, 2005 at 1:00 p.m.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington Corporation,<br><br>                   Plaintiff,<br><br>v.<br><br>KAI-FU LEE and GOOGLE INC., a Delaware Corporation,<br><br>                   Defendants. | No. 05-2-23561-6 SEA<br><br>MICROSOFT'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE |

MOTION FOR TEMPORARY
RESTRAINING ORDER.

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I. INTRODUCTION AND RELIEF REQUESTED

Dr. Kai-Fu Lee -- with Google's encouragement -- is blatantly violating his non-competition promises to Microsoft. He is doing so by defecting Microsoft for Google, a direct competitor in markets as to which Dr. Lee holds Microsoft's most sensitive technical and strategic information. The non-compete provisions Microsoft seeks to enforce are narrowly drawn and were agreed to by Dr. Lee as a condition of his return to Redmond as a Microsoft Vice President, a position for which he was paid over a million dollars last year alone.

For the last five years, Dr. Lee has held leadership positions with respect to Microsoft's efforts to develop new and improved search engine technologies. Microsoft is engaged in intense competition with Google in the market for these products. By virtue of his leadership roles, Dr. Lee learned Microsoft's most sensitive technical and strategic business secrets about search technologies. Throughout this time he was also deeply involved in Microsoft's efforts to expand its business in China and learned Microsoft's confidential strategic plans regarding that crucial new market.

Dr. Lee decided to defect Microsoft for Google in order to lead Google's new China operation developing search technology. This places him in direct competition with Microsoft on two issues -- search engines and China strategy -- where Dr. Lee holds Microsoft's most proprietary, confidential, and competitively sensitive information. This is a clear violation of the non-compete provisions of Dr. Lee's Employment Agreement. Microsoft is therefore compelled to seek a Temporary Restraining Order to prevent the actual and substantial injury that will result if Dr. Lee is allowed to violate his non-competition promises.

## II. FACTS AND PROCEDURAL HISTORY

A. **Dr. Lee Agreed to a Narrowly Drawn Non-Compete as a Condition of His Employment and Promotion.**

In August 2000, after two years managing Microsoft's Chinese Research facility, Dr. Lee was rehired by Microsoft at Microsoft's Redmond, Washington campus and promoted to

MOTION FOR TEMPORARY
RESTRAINING ORDER - 1

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Vice President of the Natural Interactive Services Division.[1] Dr. Lee moved back to the United States, establishing and maintaining his residence in the Redmond area, where he still owns his residence.[2]

As a condition of his return to Microsoft as Vice President, Dr. Lee executed an Employee Agreement with Microsoft. Dr. Lee signed this Employee Agreement on August 8, 2000, and his signature was acknowledged by a Microsoft witness.[3] This contract contained confidentiality and non-competition provisions. In particular, Paragraph 9 of the Agreement provides, in relevant part:

> **9. Non-Competition and Non-Solicitation.** While employed at Microsoft **and for a period of one year thereafter,** I will not (a) accept employment or engage in activities competitive with products, services or projects (including actual or demonstrably anticipated research or development) on which I worked or about which I learned confidential or proprietary information or trade secrets while employed at Microsoft; (b) render services to any client or customer of Microsoft for which I performed services during the twelve months prior to leaving Microsoft's employ; (c) induce, attempt to induce, or assist another to induce or attempt to induce any person to terminate his employment with Microsoft or to work for me of for any other person or entity. If during or after my employment with Microsoft I seek work elsewhere, I will provide a copy of this Agreement to any persons or entities by whom I am seeking to be hired before accepting employment with or engagement by them.

In addition, in Paragraph 12 of the Agreement, Dr. Lee agreed that injunctive relief is the appropriate remedy for breach of this provision.

Dr. Lee is well aware of these non-competition provisions of his Employee Agreement. He personally signed and acknowledged these provisions on at least three separate occasions.[4] Without such promises, Microsoft never would have hired Dr. Lee, nor would it have given him access to its highest levels of confidential information. Dr. Lee was well paid in exchange for these promises. He has received over well over $3 Million in total compensation since he returned to Microsoft in August of 2000, including more than $1 Million in 2004 alone.[5]

---

[1] Declaration of Marla Mellies ("Mellies Decl."), ¶¶ 3-7 and Exs. A-D.
[2] Mellies Decl., ¶ 9.
[3] Mellies Decl., Ex. F.
[4] Mellies Decl., Exs. B, C, and F.
[5] Mellies Decl., ¶ 8.

MOTION FOR TEMPORARY
RESTRAINING ORDER - 2

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### B. Dr. Lee Was Intimately Involved in Microsoft's Efforts to Develop New and Improved Search Technologies and Products to Compete Directly with Google.

As Vice President in Microsoft's Natural Interactive Services Division, one of Dr. Lee's primary responsibilities was to lead Microsoft's efforts in developing new search engine technologies for MSN. MSN's search related advertising provides hundreds of millions of dollars in revenue to Microsoft each year.[6] One of Microsoft's largest competitors for these revenues is Google, which directly competes with Microsoft in the search engine market. As Google admits: "We consider our primary competitors to be Microsoft Corporation and Yahoo! Inc."[7]

Until his resignation, Dr. Lee managed technical teams working on key future technology for MSN Search as well as other Microsoft products.[8] At one point Dr. Lee was even in charge of Microsoft's overall business efforts for MSN Search.[9] Many of the technological developments managed by Dr. Lee are integral to Microsoft's future innovation in this area.[10] These innovations include: (1) highly confidential improvements in natural language processing that will enable new and innovative ways to improve search results, (2) highly confidential innovations in speech research that will ultimately improve MSN's ability to search for audio and video files; and (3) highly confidential new and innovative search technologies using machine learning concepts.[11] Dr. Lee is intimately familiar with the software architecture, source code, and algorithmic structure for the current MSN search engine, as well as these new innovative search technologies. He also is intimately familiar with Microsoft's strategic business plans to market and monetize search products.[12]

In addition, MSN distributes the Windows Desktop Search engine that allows users to search the files on their desktop computers.[13] This product competes directly with Google's

---

[6] Declaration of Christopher Payne ("Payne Decl."), ¶ 2.
[7] Declaration of Jeffrey Johnson ("Johnson Decl."), Ex. D at 30 (Google Inc.'s SEC 10-Q filing from May 16, 2005).
[8] Payne Decl., ¶ 3.
[9] Payne Decl., ¶ 4
[10] Payne Decl., ¶ 3.
[11] *Id.*, *see also* Declaration of Sin Lew ("Lew Decl."), ¶ 2-3.
[12] Payne Decl., ¶ 4; Lew Decl., ¶¶ 3-4.
[13] Declaration of David Dawson ("Dawson Decl."), ¶ 2.

MOTION FOR TEMPORARY
RESTRAINING ORDER - 3

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

desktop search application.[14] The Windows Desktop Search engine was developed in conjunction with Dr. Lee's group, and Dr. Lee is familiar with confidential and proprietary aspects of the product including its architecture, source code and algorithmic structure as well as highly confidential plans for future innovations.[15]

### C. Dr. Lee Was Intimately Involved in Microsoft's Efforts to Expand its Presence in China.

In addition to his leadership role with respect to search technologies, Dr. Lee was one of the lead executives in charge of developing and implementing Microsoft's business strategies with respect to China. For instance, Dr. Lee was an active member of the China Redmond Advisory Board (the "CRAB"), an executive committee at Microsoft that reviews the company's most important plans for the China market in highly confidential meetings.[16] At these meetings, the board reviews detailed and confidential information regarding Microsoft's present initiatives and expenditures in China, relations with the Chinese government, private investment strategies, and Chinese companies targeted for acquisition.[17]

Dr. Lee regularly attended these confidential meetings. Indeed, he attended and participated in the most recent CRAB meeting that occurred on May 16, 2005, in Redmond. At that meeting, senior Microsoft executives briefed the CRAB members specifically on plans for the MSN product in China.[18] Moreover, through his work on the CRAB, Dr. Lee knows: (1) the identity of Microsoft's specific planned investment targets in China and the amount of those investments, and (2) Microsoft's existing and planned technical and capital initiatives in the China market. Information of this kind would be extremely valuable to a competitor such as Google that is actively seeking to move into the Chinese market.[19]

---

[14] *Id.*
[15] Dawson Decl., ¶¶ 3-5.
[16] Declaration of Craig Mundie ("Mundie Decl."), ¶ 2-3.
[17] Mundie Decl., ¶¶ 4-5.
[18] Mundie Decl., ¶ 5.
[19] Mundie Decl., ¶¶ 6-7.

MOTION FOR TEMPORARY
RESTRAINING ORDER - 4

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### D. Dr. Lee Had Recent Access to Microsoft's Confidential Plans to Compete with Google.

Due to his status as a senior executive, Dr. Lee had frequent access to highly confidential competitive plans including plans to compete with Google. For instance, Dr. Lee attended a March 24, 2005, highly confidential executive-only briefing entitled "The Google Challenge."[20] Through this briefing, and as an executive working on search product strategy, Dr. Lee was made aware of: (1) Microsoft's overarching plan to compete with Google in the search engine marketplace, (2) specific product characteristics and product components that Microsoft is developing to advance that competition, and (3) specific strategic opportunities identified by Microsoft as the most promising means to compete effectively with Google. In short, Dr. Lee was recently handed Microsoft's entire Google competition "playbook."[21]

### E. Dr. Lee Recently Announced He is Leaving Microsoft to Accept a Position with Google to Lead its New China Office.

On July 5, 2005, while supposedly on a paid-sabbatical from which he had twice promised to return to Microsoft, Dr. Lee informed the head of his department, Eric Rudder, that he was considering an employment position offered by Google.[22] Dr. Lee stated that he had contacted Google regarding employment six weeks before. He stated that Google had offered him the opportunity to build and lead its China office "end to end." Eric Rudder was able to convince Dr. Lee to wait and explore opportunities for a Microsoft position in China.[23]

Subsequent to this July 5 discussion, several senior executives at Microsoft met with Dr. Lee in an attempt to convince him not to leave the company. However, on July 18, 2005, Dr. Lee told Mr. Rudder that he had decided to resign from Microsoft and accept the offer

---

[20] Payne Decl., ¶ 5.
[21] Id.
[22] Declaration of Eric Rudder ("Rudder Decl."), ¶¶ 4-6. Dr. Lee's decision to take a sabbatical and then not return to Microsoft violates company policy regarding sabbatical leave, a policy that Dr. Lee confirmed in writing, and orally, before he was granted a sabbatical. Rudder Decl., ¶¶4-5. Had Dr. Lee informed Microsoft that he planned to use his sabbatical to pursue other employment opportunities, he would not have been eligible to take a sabbatical. Rudder Decl., ¶ 7.
[23] Rudder Decl., ¶ 6.

MOTION FOR TEMPORARY
RESTRAINING ORDER - 5

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  from Google to work in China.[24] Google publicly announced its hiring of Dr. Lee the next
2  day, confirming that Dr. Lee's new position will be directly competitive to the work he
3  performed at Microsoft on search engines and the China market: "Google Inc ...., developer
4  of the award-winning search engine, today announced that it will open a product research and
5  development center in China, and has hired respected computer scientist and industry pioneer,
6  Dr. Kai-Fu Lee, to lead the operation and serve as President of the company's growing
7  Chinese operations."[25]

8  Google's press release and public statements confirm that Dr. Lee will be working on
9  Google's search engine product in China. "The opening of an R&D center in China will
10 strengthen Google's efforts in delivering the best search experience to users and partners
11 worldwide."[26] "As Google continues to explore the Chinese market, *the center will focus on*
12 *the development of the company's existing products, as well as developing new innovative*
13 *technologies and projects*." (emphasis added).[27]

### III. STATEMENT OF THE ISSUE

Should the Court enter a temporary restraining order prohibiting Dr. Lee from working for Google in violation of his Employment Agreement?

### IV. EVIDENCE RELIED UPON

This motion relies upon the declarations of David Dawson, Jeffrey Johnson, Sin Lew, Marla Mellies, Craig Mundie, Christopher Payne, and Eric Rudder, and any exhibits attached thereto, and the pleadings and other papers on file.

### V. AUTHORITY AND ARGUMENT

Microsoft allowed Dr. Lee access to its confidential information and trade secrets only under express, written restrictions governing his conduct should he leave Microsoft's

---

[24] Rudder Decl., ¶ 8; Mellies Decl., Ex. G (Dr. Lee's resignation letter).
[25] Johnson Decl., Ex. B (Google Press Release).
[26] *Id.*
[27] Johnson Decl., Ex. C (China Business News On-Line, July 20, 2005, quoting a Google media representative from China).

MOTION FOR TEMPORARY
RESTRAINING ORDER - 6
K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

employment, restrictions to which he agreed as a condition of his employment. Dr. Lee has knowledge of sensitive and valuable Microsoft confidential competitive information concerning search technology and strategy and Microsoft's business plans in China. He promised not to compete directly with Microsoft for a period of one year. Dr. Lee breached his promises by accepting a leadership position in China with Google -- a company whose primary product stands in direct competition with Microsoft. Under these circumstances, the Court can and should exercise its equitable powers to order Dr. Lee and Google to live up to the promises that Dr. Lee made to Microsoft.[28]

### A. Microsoft Is Entitled To A Temporary Restraining Order Because Dr. Lee is Breaching His Promise Not To Compete With Microsoft.

The decision to issue a temporary restraining order ("TRO") turns on the circumstances of each case, Federal Way Family Physicians v. Tacoma Stands Up for Life, 106 Wn.2d 261, 264 (1986), and courts grant great deference to the equities of the situation, Tyler Pipe Indus., Inc. v. Department of Revenue, 96 Wash. 2d 785, 792 (1982). Significantly, it is well-established that injunctive relief is an appropriate remedy for violations of a contractual promise not to compete. See, e.g., Wood v. May, 73 Wn.2d 307, 314 (1968). Under Washington law, a TRO is available where: (1) the plaintiff shows that it has a clear legal or equitable right; (2) the plaintiff has a well-grounded fear of immediate invasion of that right; and (3) the acts complained of are either resulting or will result in actual or substantial injury to the plaintiff. Federal Way Family Physicians, 106 Wn.2d at 265.

#### 1. Microsoft Has a Clear Legal and Equitable Right.

Dr. Lee's promises not to compete give Microsoft a legal right that is clearly enforceable under Washington law. Non-compete agreements are enforceable if reasonably necessary to protect the employer's confidential business information. See, e.g., Perry v.

---

[28] On July 21, Microsoft's counsel notified defendants' counsel that this TRO hearing would be held on Wednesday, July 27, and that the TRO papers would be filed and served by noon on Monday, July 25, 2005. Therefore, defendants have received notice and an opportunity to be heard on this Motion. Johnson Decl., ¶ 2.

MOTION FOR TEMPORARY
RESTRAINING ORDER - 7
K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Moran, 109 Wn.2d 691, 700-01 (1987) (observing that a covenant not to compete is an inherently reasonable way for an employer to protect himself against defecting employees who might otherwise take advantage of information obtained from the employer), on reconsideration, modified on other grounds by, 111 Wn.2d 885 (1989). As Washington courts have repeatedly recognized, non-compete agreements are useful and beneficial because they allow employers to share confidential information with employees without unknowingly advancing the interests of competitors or would-be competitors. See, e.g., Copier Specialists, Inc. v. Gillen, 76 Wn. App. 771, 774 (1995). Such agreements are enforceable despite an employee's insistence that he or she will not disclose confidential business information. The very point of a non-compete is to provide a company with the security of knowing that it does not have to rely on such assurances. See Cabot Corp. v. King, 790 F. Supp. 153, 156-58 (N.D. Ohio 1992) ("[t]here is no way, short of banning [employee] from working for [competitor] of insuring that [employee] will not divulge the information he had regarding [former employer]"). Consequently, a non-compete agreement will be enforced so long as it is reasonably necessary to protect the employer's business, does not impose on the employee any greater restraint than is reasonably necessary for that protection, and is not contrary to the public interest. Perry, 109 Wn.2d at 698.

    a.    **The Restraint is Reasonably Necessary to Protect Microsoft's Confidential Business Information.**

In this instance, the restraint is necessary to protect Microsoft's business and competitive interests. Microsoft has a paramount interest in protecting its confidential, proprietary and trade secret information. This is particularly true where, as here, there is an extremely close nexus between the work done by Dr. Lee at Microsoft and the work he will do at Google. Both the product line (search engine technology) and the geographical market (China) directly overlap.

Non-compete clauses such as the one agreed to by Dr. Lee serve the legitimate purpose

MOTION FOR TEMPORARY
RESTRAINING ORDER - 8

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

of ensuring that Microsoft's confidential information is not used in competition with Microsoft. "The essential purpose of the post-employment restraint . . . is . . . to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." Perry, 109 Wn.2d at 702 (citing Blake, *Employee Agreements Not To Compete*, 73 Harv. L. Rev. 625, 647 (1960)).

Not only did Microsoft give Dr. Lee access to its proprietary and confidential plans and strategies, it allowed him direct access to its most valuable trade secrets, including the technical architecture and specifications for its search-engine technologies and future plans. Indeed, Dr. Lee spent many hours -- while being paid handsomely by Microsoft -- learning and refining this technical architecture. It took Microsoft several years and a substantial monetary investment to develop these technologies. The architecture, design, code and future development plans for Microsoft's search engine products are not known outside of Microsoft, and Microsoft takes special precautions to ensure the secrecy of this information. This is precisely why a TRO is reasonably necessary to protect Microsoft's business and goodwill.

      b.    **The Restriction Is No Greater Than Is Reasonably Necessary to Protect Microsoft's Legitimate Business Interests.**

The non-compete provisions of the Employment Agreement are well within the bounds of what courts typically consider to be reasonable restraints. The scope of the non-compete provision agreed to by Dr. Lee is quite narrow, applying only to certain, defined competitive activities and *continuing for only one year after termination of employment*. The non-compete does not prohibit Dr. Lee from working for a Microsoft competitor. Instead, Dr. Lee's Agreement only prohibits competition in the specific areas where Dr. Lee worked for Microsoft or in areas where he was exposed to confidential or proprietary information. Such a narrowly crafted prohibition on competition for only one year imposes little burden on Dr. Lee, and is far less restrictive than other non-compete agreements that courts in this state have

MOTION FOR TEMPORARY
RESTRAINING ORDER - 9

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

enforced in other cases. Compare Knight, Vale & Gregory v. McDaniel, 37 Wn. App. 366, 369-71, rev. denied, 101 Wn.2d 1025 (1984) (finding a three-year non-compete reasonable because company had legitimate business interest in protecting important information and relationships); Racine v. Bender, 141 Wn. 606, 610 (1927) (finding three-year non-compete "reasonably necessary to protect the business or good will of the employer").

In light of the limited scope of the non-compete and Microsoft's worldwide business, the absence of an explicit geographical scope to the agreement is irrelevant. Microsoft's business, including its search business, is worldwide, and its business interests in China are substantial.[29] Washington courts "have consistently recognized that an employer is entitled to a restrictive covenant that is as broad in scope as the business which the covenant seeks to protect." ISC-Bunker Ramo Corp. v. Altech, Inc., 765 F. Supp. 1310, 1336 (N.D. Ill. 1990) (applying Washington law to uphold a nationwide non-compete and citing Central Credit Collection Control Corp. v. Grayson, 7 Wn. App. 56, 59 (1972)).

    c.    **The Agreement Imposes No Undue Hardship on Dr. Lee or the Public.**

Significantly, the non-compete provision of the Agreement does *not* limit Dr. Lee's ability to work for *all* competitors of Microsoft. Rather, it only prohibits him from working for competitors who actually compete with Microsoft with respect to the same product or technology that he worked on or obtained confidential information about while employed at Microsoft, and only for one year. There are many positions with Microsoft's competitors that Dr. Lee could undertake without violating his agreement. Moreover, there will be no substantial impact to the public by enforcing Dr. Lee's promises in this case. The public is best served by fair competition in the marketplace. Dr. Lee's Employment Agreement serves to protect and enable such fair competition by protecting Microsoft's confidential information from misuse.

---

[29] Mundie Decl., ¶¶ 2-7.

MOTION FOR TEMPORARY RESTRAINING ORDER - 10

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The non-competition provision is narrowly tailored to protect Microsoft's legitimate interests. Consequently, Microsoft's rights under the Agreement are fair and enforceable.

### 2. Microsoft Has a Well-Grounded Fear that Its Legal Rights Are Being and Will Continue to Be Violated.

On July 18, 2005, defendant Dr. Lee confirmed his resignation from Microsoft and his intention to accept his new employment with Google.[30] Dr. Lee will immediately begin work on behalf of Google and its directly competing search-engine product.[31] Therefore, a direct violation of Microsoft's contractual rights is not just threatened, it is already occurring, and will continue unless the Court grants Microsoft's request for a TRO.

### 3. If Defendants Are Permitted to Unfairly Compete, Microsoft Will Suffer Actual and Substantial Injury.

Defendants' conduct illustrates precisely why a limited non-compete provision was included in Dr. Lee's Employment Agreement, and why a TRO is necessary to protect Microsoft's proprietary and confidential information from improper use by a direct competitor. If defendants are not enjoined, the essential purpose of the non-compete provision will be frustrated. Perry, 109 Wn.2d at 702 ("The essential purpose of the post-employment restraint . . . is . . . to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment."). Microsoft will have no effective remedy because the harm is immediate, hard to quantify, and the one-year limitation period will likely expire before trial. Absent an immediate injunction, Microsoft loses the benefit of its bargain, while Dr. Lee has already obtained all the benefits. Such a result would be manifestly inequitable. Indeed, for these reasons Dr. Lee agreed to injunctive relief in paragraph 12 of his Agreement.

Threatened misappropriation of a trade secret is itself grounds for injunctive relief. RCW 19.108.020. A showing of harm is not required for injunctive relief when trade secret

---

[30] Rudder Decl., ¶ 8; Mellies Decl., Ex. G.
[31] Johnson Decl., Exs. B-C.

MOTION FOR TEMPORARY
RESTRAINING ORDER - 11
K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

misappropriation is at issue because the harm is inherent. See <u>Boeing Co. v. Sierracin Corp.</u>, 108 Wn.2d 38, 62-63 (1987). "[D]amages will not be an adequate remedy when the competitor has obtained the secrets. The cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss." <u>National Starch & Chem. Corp. v. Parker Chem. Corp.</u>, 530 A.2d 31, 33 (N.J. Super. A.D. 1987).

Finally, a TRO is necessary because the actual and substantial injury Microsoft has suffered and will continue to suffer as a result of defendants' breach is unlikely to be adequately remediable at law—*i.e.*, by monetary damages. As the Washington Supreme Court has acknowledged, monetary damages are inherently difficult to ascertain when dealing with a breach of a promise not to compete: "[I]t must be conceded that, in this type of case, the harm caused by the breach *usually is incapable of accurate estimation*." <u>Management, Inc. v. Schassberger</u>, 39 Wn.2d 321, 328 (1951) (emphasis added). In this case, the direct financial harm associated with Dr. Lee's use of Microsoft's proprietary and confidential intellectual property at Google -- while substantial -- will be very difficult to ascertain.

## VI. CONCLUSION

For all of the aforementioned reasons, Microsoft is entitled to a Temporary Restraining Order holding Dr. Lee and Google to Dr. Lee's promises.

DATED this 25th day of July, 2005.

PRESTON GATES & ELLIS LLP

By _____
Jeffrey C. Johnson, WSBA #23066
Jay Carlson, WSBA # 30411
Sarah Johnson, WSBA # 34529

Attorneys for Plaintiff Microsoft Corporation

MOTION FOR TEMPORARY
RESTRAINING ORDER - 12

K:\00103\02840\JJ1C\JJ1CP20XV

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022