HONORABLE STEVEN GONZÁLEZ
HEARING DATE: JULY 27, 2005, 1:00 P.M.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

MICROSOFT CORPORATION, a
Washington corporation,

    Plaintiff,

vs.

KAI-FU LEE, and GOOGLE INC., a
Delaware corporation,

    Defendants.

CIVIL ACTION No. 05-2-23561-6

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -i-
05-2-23561

DORSEY & WHITNEY LLP
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................................1

II. STATEMENT OF FACTS .........................................................................................................2

    A.    Microsoft............................................................................................................................2

    B.    Google. ..............................................................................................................................2

    C.    Kai-Fu Lee.........................................................................................................................3

    D.    Lee's Separation From Microsoft. ....................................................................................6

III. ARGUMENT .............................................................................................................................7

    A.    Microsoft Has No Clear Legal Or Equitable Right..........................................................7

        1.    Microsoft Does Not Have A Legitimate Protectable Interest. ...............................7

        2.    The Microsoft Non-Compete Is Unreasonable. ......................................................9

        3.    Lee Is Not Competing...........................................................................................10

    B.    The Purportedly Treated Harm Is Not Imminent And Microsoft Has Failed To Establish That The Purported Harm Would Be Irreparable. ..............11

IV. CONCLUSION ........................................................................................................................11

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -i-
05-2-23561

DORSEY & WHITNEY LLP
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

## I. INTRODUCTION

In a shocking display of hubris, Microsoft has rushed into court claiming the entire field of search as its own. In truth, Kai-Fu Lee's work for Microsoft had only the most tangential connection to search and no connection whatsoever to Google's work in this space. Microsoft can make no showing that anything Lee will do for Google will in any way be competitive with his past work for Microsoft – especially the work he had done in his last year there.

Lee <u>has not disclosed</u> any of Microsoft's secrets to Google. Google has told Lee repeatedly <u>not</u> to disclose Microsoft's confidences. Both Defendants have behaved honorably. Despite weeks of time to scour Lee's e-mails and hard drive, Microsoft asks this Court, on the basis of mere speculation and innuendo, simply to assume that Lee will breach his nondisclosure obligations. It seeks to impugn Lee's good reputation with no evidence in support. But that is <u>not</u> how the legal system works. Microsoft, in order to obtain the extraordinary relief it seeks, must <u>prove</u> that there is an imminent threat to a legitimate interest it holds. Its "evidence," however, does no such thing.

The issue is not whether <u>Google</u> competes with Microsoft, but at best <u>what Lee is doing for Google</u> is competitive with what Lee did for Microsoft. Lee is not doing anything at Google that would compete with what he did at Microsoft. Lee is a new employee still undergoing orientation and just learning about Google - not violating his Employment Agreement. Even after his orientation period, Lee's efforts in locating a new facility and other related start-up activities will not violate his Employment Agreement.

This lawsuit is a charade. Indeed, Microsoft executives admitted to Lee that their real intent is to scare other Microsoft employees into remaining at the company. Microsoft's scant showing reveals the truth of its motion: the TRO Microsoft seeks would be a blatant prior restraint on speech, in violation of the First Amendment.[1] A prior restraint is constitutional only

---

[1] *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights").

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -1-
05-2-23561

DORSEY & WHITNEY LLP
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

if it "sweeps no more broadly than necessary."[2] Microsoft has made no showing of imminent harm, and thus no showing of the necessity of a prior restraint. Microsoft's public litigation strategy guarantees the maximum negative impact on Lee, seeking his termination from Google under a clouded name. Microsoft cannot prove its case and this motion must be denied.

## II. STATEMENT OF FACTS

### A. Microsoft.

Microsoft is the world's largest and most widely recognized software manufacturer. In 2004, Microsoft employed 28,000 people in King County alone. Droke Decl., ¶ 3. It is presently unknown how many of these employees were hired either from a Microsoft competitor or another company at which they learned trade secrets they were unable to disclose to Microsoft. Microsoft is projected to add another 10,000 workers in the next ten years. Id., ¶ 4, Exh. A. Microsoft has subsidiaries and business interests in computers, software products, information systems, internet, and technology, around the world. Id., ¶¶ 4-5, Exh. B. Microsoft has an existing infrastructure and employee base of over 900 in China. Droke Decl., Exh. E.

### B. Google.

Google is a public company founded in September 1998, best known for its web search product, an algorithmic Internet search engine available at many international domains. Eustace Decl., ¶ 2.[3] Google's technology and continued innovation serve the company's mission of "organizing the world's information and making it universally accessible and useful." Eustace Decl., ¶ 5. As of December 31, 2004, Google employed 3,021 individuals worldwide - about

---

[2] *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973).
[3] Google's systems constantly search the World Wide Web ("crawl the web") to automatically identify and index web pages. Eustace Decl., ¶ 3. When a user submits a search query, Google applies its proprietary algorithms to identify and rank web pages relevant to that query from the vast database of indexed. Google also provides advertising and search services to advertisers, content publishers and site managers. Eustace Decl., ¶¶ 3, 4.

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -2-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
·1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

10% of Microsoft's King County employment alone and only three times Microsoft's China presence. Google presently has no research operations in China. Eustace Decl., ¶ 11.

Google's search technology does not rely on natural language processing. *Id.*, ¶ 6. Lee is not expected to supervise any natural language processing projects at Google. *Id.* Google has no plans to pursue natural language processing projects at its future China research and development center, and especially not in the next year. Google's search technology does not rely on speech recognition technology. Google has no plans to pursue speech recognition projects at its future China research and development center, particularly not in the next year. *Id.*, ¶ 7. Lee will not supervise any "machine learning projects"[4] that would require him to use or disclose any confidential and proprietary Microsoft information.

### C. Kai-Fu Lee.

Kai-Fu Lee already had a distinguished career at Silicon Graphics and Apple when he started at Microsoft in 1998. Lee Decl., ¶ 12; Lee Supp. Decl., ¶ 1. He took steps to ensure that he did not disclose or use any trade secret he had learned while at a prior employer. Lee Supp. Decl., ¶ 2. He similarly took steps to make sure he protected Microsoft's trade secrets. Lee Supp. Decl., ¶ 3. He was consistently rated as "exceptional" in the area of integrity, including protection of Microsoft assets and intellectual property, by the same people who have now signed declarations against him. Lee Supp. Decl., ¶ 4.

Lee is not a search expert. Throughout his career, both before Microsoft and while employed there, Lee was an executive who managed groups developing technologies primarily in the area of speech recognition and enhancing the user interface. Lee Decl., ¶ 11. This information was not being actively considered for any search application when Lee left Microsoft's employment just days ago. Lee Supp. Decl., ¶ 5. He had limited access to or

---

[4] "Machine learning" is a very broad term that could include a huge number of research ideas.

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -3-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

knowledge of the purported trade secret information asserted in the Complaint and Microsoft's motion. *Id.* He is not a "search expert," nor has his personal work focused on search. *Id.*

### a. Microsoft's China Academic Research Facility, 1998-2000.

In 1998, Lee opened and ran an academic research facility in China, he left that position over five years ago. *Id.*, ¶ 6. The focus of the facility's work during Lee's tenure was to conduct academic research and issue research publications. *Id.*, ¶ 6. In contrast, Google's center will focus on product development, not academic publication, based on technical issues generated by a staff that has yet to be hired. *Id.*, ¶ 6. Lee has no way of knowing whether Google's ultimate research and development efforts will, in some respect, overlap whatever Microsoft's efforts have been to date. *Id.*, ¶ 6. Moreover, Lee will not be responsible for Google's overall Internet search application development during the next year. *Id.*, ¶ 6.

### b. Lee Had Limited Access To Microsoft's Purported Trade Secret Information About China.

Since 2000, Lee has had only limited involvement in Microsoft's China operations. Lee's involvement was limited to attendance at occasional "CRAB" meetings where updates were provided as to its China operations. *Id.*, ¶ 7. This did not involve a "project," but instead a high-level advisory committee focusing on issues specific to Microsoft which would not be beneficial to Google. *Id.*, ¶ 7. Lee does not recall any discussion of Internet Search or MSN China other than already-public information. *Id.*, ¶ 7. Lee does not recall any specific information from the most recent CRAB meeting he attended in May. Lee Supp. Decl., ¶ 9. Microsoft's own promotional materials confirm that after transferring to Redmond, Lee did not perform substantial work in China, did not engage in development of core search technologies which might be competitive with Google, and that his work for Google will not be competitive with work he was performing at Microsoft. Droke Decl., ¶ 6, Exhs. D, E. Information about Microsoft's existing operation will be stale (12 months old) by the time the future Google R&D center in China has been staffed.

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -4-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

### c. Lee's Limited And Tangential Involvement With Search Issues Ended In Mid-2004.

Microsoft fails to explain the current algorithmic-search-MSN Search and the past partner-reliant MSN Search, and significantly overstates Lee's responsibilities. Both Google and MSN Search today are algorithmic Internet Search. But Lee was never responsible for algorithmic Internet search at Microsoft, never saw that code, and never participated in a code review. Lee Decl., ¶ 8. Lee had oversight responsibility for a team named "MSN Search" for only about one year between 2001 and 2002. *Id.* This "MSN Search" did not search itself; instead it sent queries to be run on algorithmic-based search engine partners such as Inktomi and Alta Vista. *Id.* At the time, Google competed with Inktomi and Alta Vista, not with Microsoft – indeed, Google was a potential partner, not a competitor. *Id.*

Even for this relatively simple "MSN Search of 2001-2002" application, Lee was an executive – he did not participate in the review of software code and did not work on any architecture or algorithm design that was a part of the actual product. *Id.* In 2002, the Microsoft team responsible for MSN development was transferred to Christopher Payne. *Id.* E-mail messages at the time declared that "competing with Google was Chris Payne's job," not Lee's. *Id.*; Lee Supp. Decl., ¶ 11. Since 2002, Lee has made no contribution in algorithm designs to improve Microsoft's Internet search engine, has not participated in review of the software code, and has had no involvement with any of the advertising or monetization architecture. Lee Decl., ¶ 8, 9. He was not invited to and did not attend any MSN Internet Search technical or strategic planning meetings. *Id.*, ¶ 9. Lee has not had any involvement in search-related issues since 2002, except a single brief meeting in 2004.

In approximately April 2004, about 5 people on the team led by Lee started an unofficial desktop search project without consulting him. Lee Decl., ¶ 10. It was June 2004 before Lee heard of this skunk works project, reviewed and approved it. Approximately one month later, it was transferred to MSN, a team not directed by Lee, because Bill Gates designated MSN to compete against other algorithmic Internet Search companies (such as Google); *Id.* Lee does

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -5-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

not have any proprietary knowledge regarding that project nor would any such knowledge be of use or relevant to any anticipated responsibilities at Google. *Id.* Lee has not met with any member of the MSN Desktop Search team since their departure from his division in approximately July 2004; Lee does not know their project plan. *Id.*

### d. Lee's Current Work Will Not Involve Competitive Activities During The First Twelve Months After His Microsoft Separation.

Lee is currently working at Google's world headquarters in Mountain View, California. Lee Decl., ¶ 5. Presently and over the next year, Lee will focus on helping Google create and establish a new research and development facility in China. Lee Decl., ¶ 5. For the next several months, Lee will live and spend most of his working time in Mountain View overseeing the progress of Google's new research and development center. Lee Decl., ¶ 5.

Lee is simply participating in the Google corporate orientation program in Mountain View. Lee Decl., ¶ 5; Eustace Decl., ¶ 14. He is meeting members of the Google management team with whom he will maintain a continuing relationship while stationed in China, developing the timetables for the recruitment of professional personnel and the construction of Google's new China facility, and pursuing a personal writing project. Lee Decl., ¶ 5. Recruiting is expected to begin in late 2005. *Id.*; Eustace Decl., ¶ 15. The bulk of the new hires will be students graduating at the end of the 2005-2006 school term; there will be a critical mass in approximately August-September 2006. Lee Decl., ¶ 5; Eustace Decl., ¶¶ 15, 16.

### D. Lee's Separation From Microsoft.

Lee informed Microsoft's Eric Rudder, the head of Lee's department and Senior Vice President, Servers and Tools, that he was leaving Microsoft at the end of his sabbatical considering taking a position at Google. This meeting occurred on July 5, 2005, while Lee was on a break from a sabbatical that began on June 9 and was to continue until the end of September. Lee Decl., ¶ 15. Lee offered to remain employed for several months to ensure a smooth transition. Lee Decl., ¶ 15. Microsoft began courting Lee to remain with the company, offering him numerous options. *Id.*; *see also,* Rudder Decl., ¶ 6. Microsoft representatives made

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -6-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

several statements to him confirming that if he left they would file a lawsuit against him. The issue was not his non-compete – to the contrary, it was recognized that he could work at Google. Lee Decl., ¶¶ 18-21.[5] Lee was careful to avoid taking any Microsoft proprietary, confidential or trade secret information from his office upon his departure, as directed by Google. Lee Decl., ¶¶ 15, 4. While Microsoft has known of Lee's Google position since July 5, it has <u>produced no evidence</u> whatsoever that he in any way copied, forwarded, or accessed any confidential information for the purpose of using it at Google.

### III. ARGUMENT

#### A. Microsoft Has No Clear Legal Or Equitable Right

"[A]n injunction will not issue in a doubtful case." *Federal Way Family Physicians, Inc. v. Tacoma Stands Up for Life*, 106 Wash.2d 261, 265 (1986). Further, public policy requires a careful review of covenants not to compete. *Knight, Vale & Gregory v. McDaniel*, 37 Wn. App. 366, 370 (1984). Microsoft had failed to establish that it has a clear legal or equitable right for at least three reasons: Microsoft has no legitimate protectable interest; (2) the non-compete is unreasonable; and (3) Lee is not, in any event, competing. See, *Washington Fed. of State Employees v. State of Washington*, 99 Wn.2d 878, 888 (1983).

#### 1. Microsoft Does Not Have A Legitimate Protectable Interest.

Enforceability is counterbalanced against Washington's <u>constitutional prohibition on restraints in trade</u>. See, *Sheppard v. Blackstock Lumber Co., Inc.*, 85 Wn. 2d, 929, 931 (1975) (citing Wash. Const., Art 12 §22; RCW 19.86.030). "A covenant no to compete is in restraint of trade, and **such restraints are disfavored.**" *Organon, Inc. v. Hepler*, 23 Wn. App. 432 (1979) (emphasis added). Microsoft, the largest software company in the world, now claims it must be

---

[5] He was also told that the intention of filing a lawsuit against him was "not personal" but was instead designed to chill Google's recruitment of Microsoft employees. *Id.* In response to Lee's resignation, Eric Rudder stated: "Good luck at Google … You know, it's just going to be at worst some number of months you can't work. I know you'll be there sooner or later." Lee Decl., ¶ 21. Upon leaving Rudder's office, Microsoft served him with a copy of the lawsuit. *Id.*

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -7-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

1 allowed "the benefit of the bargain" by freezing Lee out of any job at Google, despite repeated
2 admissions that the Agreement allows competing work. Microsoft's market power, technical
3 strength and existing China operation preclude it from establishing any legitimate business
4 interest here.

5 Washington courts have consistently looked to an employer's ability to maintain <u>client
6 relationships</u> as a primary legitimate business interest to potentially support a non-compete
7 agreement.[6] There is no evidence whatsoever that Lee's employment by Google will impair
8 Microsoft's relationship with even a single customer.[7] This singular focus of virtually every
9 non-compete case in Washington history is not available to Microsoft.

10 Microsoft breezily intimates, without any factual basis, that Lee is likely to disclose
11 confidential or trade secret information to Google.[8] Yet Microsoft offers absolutely no evidence
12 that any such disclosure *has* occurred, and offers nothing other than wild conjecture in support of
13 its assertion that such a disclosure is even likely to occur.

14 Microsoft offers no explanation why the Agreement itself, which prohibits the disclosure
15 of confidential information, is insufficient to protect its interests. Microsoft's argument is just a
16 thinly veiled attempt to create an "inevitable disclosure" case through its non-compete – a theory
17 never adopted in Washington. Even its complaint, however, does not assert that his employment
18 with Google will require him to disclose any confidential information. Complaint, p.2, l. 7. Lee
19 has a long history of protecting intellectual property rights at Apple, Silicon Graphics, as well as
20 his tenure at Microsoft. No Washington court has held that protection of confidential or trade
21 secret information alone is a sufficient legitimate protectable interest to support enforcement of a

---

[6] See, *Racine v. Bender*, 141 Wash. 606, 607 (1927); *Perry v. Moran*, 109 Wn. 2d 691, 700 (1987); *modified on other grounds*, 111 Wn.2d 885, *cert. denied*, 492 U.S. 911 (1989). *Sheppard*, 85 Wn. 2d 99; *Knight, Vale*, 37 Wn. App. at 369.

[7] Moreover, courts have emphasized that in order to be enforceable, a non-compete must permit an employee to use their training and experience to attract clients other than by their former connections alone. *Knight, Vale*, 37 Wn. App. at 370 - 71.

[8] Defendants have moved herewith to strike numerous portions of Microsoft's declarations, including on grounds they lack foundation.

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -8-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

noncompete agreement. Here, given the lack of any evidence suggesting that Lee will breach the contractual terms against disclosure, the Court should not break new legal ground.

According to Microsoft's Complaint, prior to joining Microsoft, Lee worked for "an affiliate company in China where he was in charge of Microsoft's China research laboratory." *See* Complaint, p. 6, ll. 14 – 22. This work occurred more than 12 months before his separation from employment. Microsoft's own agreement concedes that at most it needs twelve months from the date of termination to protect its interests. Yet it attempts to claw back through more than seven years of work to support its claim that Lee cannot work for Google.

### 2.    The Microsoft Non-Compete Is Unreasonable.

Covenants not to compete upon termination of employment are unenforceable unless they are reasonable. *Knight, Vale*, 37 Wn. App. at 369 – 370 (citing *Racine*, 141 Wn. 606); *Sheppard*, 85 Wn.2d at 932 – 933. Concerns of freedom of employment and free access of the public to professional services, mandate that covenants not to compete be <u>no greater in scope than is necessary</u> to protect the <u>business or good will</u> of the employer. *Knight, Vale*, 37 Wn. App. at 370 (citing *Wood v. May*, 73 Wn.2d 307 (1968). The <u>burden is on the employer</u> to establish the reasonableness of any restrictions sought to be imposed on formed employees. *Sheppard*, 85 Wn.2d at 933. Courts look at many factors, including duration of employment, geographic area of the proposed restriction, and the employee's ability to obtain other employment. *Perry*, 109 Wn.2d at 701.

Microsoft is a behemoth organization and the loss of one employee will not result in irreparable injury to either its business or its good name in the industry. Microsoft argues that a senior executive such as Lee is precluded from competing work regarding anything he had access to, without any evidence that he accessed, retained, or disclosed confidential information. This interpretation effectively bars employment in the software industry, allowing Microsoft the power to push confidential information to its employees to lock them out of the technology and software industries in general, across the globe, if one were to accept Microsoft's arguments. An

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -9-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

injunction as proposed would be unconstitutional in the face of the Commerce Clause. *Hyatt Corp. v. Hyatt Legal Servs.*, 610 F. Supp. 381, 383-84 (N.D. Ill. 1985). The proposed order would be a chilling prior restraint of Lee's free speech rights to discuss any information about software generally, even if not confidential. Additionally, the public would lose the opportunity to benefit from Lee's wisdom and knowledge in development of products that are not similar to those on which he worked at Microsoft, also causing Lee an undue hardship. *Perry*, 109 Wn.2d at 702.

The unreasonableness of this restriction is particularly glaring here. First, the Agreement purports to prevent Lee from working for one year anywhere in the world on any projects which are "competitive with . . . projects . . . on which I worked or about which I learned confidential or proprietary information or trade secrets while employed at MICROSOFT." Microsoft contends this provision would prevent Lee from obtaining his announced position at Google, or for that matter any position competitive with products about which he learned information. Microsoft further contends that Lee either was presented with or had access to a vast scope of information. The effect of these two contentions would completely prevent Lee from any active employment anywhere in the software industry, for a full year.

### 3. Lee Is Not Competing.

There is <u>no evidence</u> that Lee's Google employment would compete with products or services of Microsoft during the first year of his employment. Microsoft has an existing infrastructure and research program in China; Google does not. Lee will spend the first several months of his employment in California, understanding the company and developing a plan for ultimately opening an office. The employee complement in Google's China operation is likely to be very small during 2005. No significant projects that are even theoretically competitive will begin until recruiting is complete – by which time the non-compete will have expired. Microsoft's interpretation of the Agreement exceeds the plain terms of the Agreement, and would impose an unreasonable and unlawful restriction on Lee.

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -10-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

### B. The Purportedly Treated Harm Is Not Imminent And Microsoft Has Failed To Establish That The Purported Harm Would Be Irreparable.

Plaintiff "must demonstrate immediate threatened harm." *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Establishing a risk of irreparable harm in the indefinite future is not enough. The harm must be shown to be <u>imminent</u>. *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-851 (9th Cir. 2001). Here, Lee is in new employee orientation. Once that is complete, it will take months for him to locate and establish a research facility in China. Only then will he begin hiring staff; such hiring is not expected to commence until next summer. He has repeatedly been warned and has repeatedly recommitted to refraining from disclosing or using any Microsoft confidential or trade secret information.[9] His immediate "work" at Google is to familiarize himself with Google – which does not violate his Agreement with Microsoft. Even once he begins work on opening Google R&D center in China, it will be a long time – longer than the one-year noncompetition Agreement – before that facility will be in a position even theoretically to compete with anything Lee did for Microsoft. In sum, any imagined "threat" assuredly is not <u>imminent.</u>

Microsoft offers no evidence suggesting that any perceived threatened harm would be irreparable. Given that Microsoft has done little actually to explain what the threatened harm is, this is not surprising. But in any event, Microsoft cannot simply <u>say</u> that the perceived harm would be irreparable; it must <u>show</u> that it would irreparable. This it has not done. There is no proof of irreparable injury, and for this independent reason the motion must be denied.

### IV. CONCLUSION

Microsoft twice admits in its motion that Lee can work for any competitor of Microsoft without violating the Employee Agreement. Microsoft offers no evidence that even suggests that

---

[9] Indeed, the steps Google has repeatedly taken to require that Lee not disclose confidential and proprietary Microsoft information are essentially the same as the steps Microsoft takes when it hires a new employee. *See* Mellies Decl., Exh. F at ¶ 7.

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -11-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

1  Lee poses any imminent, legitimate threat that requires imposition of the extraordinary remedy
2  of a temporary restraining order.

3      Microsoft's Agreement is unreasonable. Enforcement would restrict Lee from working
4  anywhere in the world. Such geographic restrictions are deemed to impose heavy burdens on
5  employees prohibiting them from working in their chosen profession, fly in the face of the
6  Commerce Clause, and constitute an unlawful restraint on trade. Microsoft attempts to restrict
7  Lee from engaging in work related to anything that he, as an executive, might have seen or been
8  able to access, even if he did not do so or his knowledge is stale. Microsoft hopes to prevent Lee
9  from working on any "projects" his subordinates – almost 400 of them – were working on. This
10 scope effectively precludes Lee from any form of employment in the software industry,
11 anywhere in the world.

12     Microsoft's market domination eliminates any legitimate interest in protecting itself from
13 competition through this lone employee. Again, Microsoft cannot prove its case and this
14 premature, baseless motion must be denied.

16 DATED this 26th day of July, 2005.

DORSEY & WHITNEY LLP

*/s/ Michael W. Droke*

Michael W. Droke, P.C. WSBA #25972

1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: (206) 903-8800
Facsimile: (206) 903-8820

Attorneys for Defendants Google Inc. and Kai-Fu Lee

OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER -12-
C 02-1876 L

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820