The Honorable Steven Gonzalez

RECEIVED
AUG 30 2005
Preston Gates & Ellis LLP

SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

MICROSOFT CORPORATION, a Washington corporation,

Plaintiff,

v.

KAI-FU LEE and GOOGLE INC., a Delaware corporation,

Defendants.

No. 05-2-23561-6SEA

KAI-FU LEE'S OPPOSITION TO MICROSOFT'S MOTION FOR PRELIMINARY INJUNCTION

## I. RELIEF REQUESTED

Defendant Kai-Fu Lee ("Dr. Lee") opposes Microsoft's Motion for Preliminary Injunction ("Motion") and respectfully submits that it must be denied.

Dr. Lee joins in and hereby adopts by reference Google's Opposition to Microsoft's Motion ("Opposition"), as well as the declarations and materials submitted in support of Google's Opposition. Dr. Lee submits this separate Opposition, however, because Microsoft's request for preliminary injunctive relief must be denied for two additional, fundamental reasons.

First, the non-compete provision upon which Microsoft bases its request for injunctive relief lacks independent consideration and is, therefore, invalid and unenforceable. The Microsoft Employee Agreement ("Agreement"), which contains the non-compete clause upon

COPY

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

which Microsoft relies, was presented to Dr. Lee by Microsoft, and executed by Dr. Lee, after there had already been a written offer and acceptance of the material terms of employment, after his employment for Microsoft became effective, and after Dr. Lee had already actually commenced work. Microsoft gave no independent, additional consideration in exchange for Dr. Lee's agreeing to the non-compete beyond that which it had already offered, and the parties had already agreed upon. As a consequence, the Agreement is invalid and unenforceable. See, e.g., Labriola v. Pollard Group, Inc., 152 Wn.2d 828, 834, 100 P.3d 791 (2004); Schneller v. Hayes, 176 Wash. 115, 118-19, 28 P.2d.273 (1934); Rosellini v. Banchero, 83 Wn. 2d 268, 273, 517 P.2d 955 (1974).[1]

Second, even if the Agreement were validly entered and supported by consideration, it cannot provide the basis for injunctive relief. Dr. Lee's employment with Microsoft was terminable at-will. Where employment is at-will, injunctive relief is not an available remedy to enforce a non-compete agreement. In Schneller, the Washington Supreme Court expressly distinguished between the existence of consideration sufficient to enforce a non-compete at law (i.e., to recover damages), and the existence of sufficient "mutuality of obligation" to sustain an action for equitable relief. See Schneller, 176 Wash. at 118-120. The Schneller court held that where employment is at-will, there is insufficient mutuality of obligation for equity to intervene, and injunctive relief is not an available remedy. Id. at 119-120. Because Dr. Lee's employment with Microsoft was at-will, even if it were validly entered, injunctive relief, which is equitable relief, is not an available remedy. See id.

For these additional reasons, Microsoft's request for injunctive relief must be denied.

[1] For the Court's convenience, Labriola, Schneller, and Banchero are submitted with the Court's working copies.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

II. BACKGROUND

From July of 1998 through July of 2000, Dr. Lee was employed by Technology Resource Management Company ("TRMC"). TRMC subsequently became Microsoft Global Resources ("MGR"). TMRC/MGR was a separate corporate entity, distinct from Microsoft Corporation. Dr. Lee's employment with MGR was for a specific term, July 1998 through July 2000. At the conclusion of his term of employment with MGR, Dr. Lee had no guarantee of further work with MGR or with Microsoft. Instead, Dr. Lee was required to apply for a position, if any existed, just like any other applicant. See Declaration of Kai-Fu Lee in Support of Opposition to Motion for Preliminary Injunction ("Lee Decl.") at ¶ 6.

In or around February of 2000, as his two-year term at MGR was ending, Dr. Lee applied to Microsoft for a position at its Redmond, Washington, facility. Id. at ¶ 11.

Over the next five months, Dr. Lee negotiated the terms of a position at Microsoft, including separate meetings with two of its most senior officers, Microsoft CEO Steve Ballmer and Group Vice President Bob Muglia. During negotiations, there was no mention of, nor any negotiation regarding, a non-compete as a condition of employment with Microsoft. Id. at ¶ 12.

In July of 2000, Bob Muglia made Dr. Lee a verbal offer to join Microsoft Corporation in the position of Vice-President of the newly created User Interface Technologies Division. Mr. Muglia provided a basic understanding of the terms of employment offered by Microsoft, including the expected range of base salary, performance bonus structure, and benefits. Mr. Muglia never mentioned that a non-compete would be required. Id. at ¶ 13.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Also in July of 2000, Dr. Lee accepted Microsoft's offer of employment, pursuant to the terms they had negotiated and that had been communicated to him in Bob Muglia's verbal offer. Id. at ¶ 14.

A written letter confirming and memorializing the terms of Dr. Lee's employment expressly states that August 1, 2000, was the effective start date of Dr. Lee's new employment with Microsoft Corporation. Id. at ¶¶ 15, 18, and Exhibit 26. Although Dr. Lee was still in China, he commenced working on August 1, 2000, by exchanging emails with Microsoft employees and reviewing information and plans related to his new position. Id. at ¶ 15.

After Dr. Lee accepted Microsoft's offer of employment, he and his family moved to the United States. Id. at ¶ 16.

By letter, dated August 3, 2000, Mr. Muglia confirmed the parties' oral negotiations and memorialized the terms of Microsoft's offer that Dr. Lee had already previously accepted some three weeks before. See id. at Exhibit 26. The letter expressly set forth the material terms and conditions of Dr. Lee's employment with Microsoft, as had already been negotiated and agreed, including Dr. Lee's position, compensation, and annual performance review and performance bonus structure. See id. at ¶18 and Exhibit 26. The letter contains no mention of agreeing to a non-compete as a condition of employment or otherwise. See id.

Notably, the letter expressly states that Dr. Lee's employment with Microsoft is at-will, and that the at-will nature of employment cannot be changed or modified except by a written employment contract signed by a Microsoft officer. See id.

Dr. Lee's first day physically in Microsoft's Redmond office was Monday, August 7 2000. See id. at ¶ 19 and Exhibit 27. Dr. Lee's calendar (recently produced by Microsoft),

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

shows that his work activities on August 7 included one-on-one meetings with Microsoft CEO Steve Ballmer, and others. See id. at Exhibit 27. On that day, August 7, Dr. Lee executed a copy of Mr. Muglia's offer letter, indicating again his "acceptance" of the terms and conditions stated therein and that had already been previously offered and accepted. See id. at ¶ 19 and Exhibit 26.

After Dr. Lee began working at the Redmond office, Microsoft's Human Resources department presented Dr. Lee with several documents to fill out and/or execute. Id. at ¶ 20. It was Dr. Lee's understanding that the need for these documents was merely administrative. Id. Among these documents was the Microsoft Employee Agreement that contains the non-compete provision upon which Microsoft bases its request for injunctive relief. See id. at Exhibit 28. The Agreement was presented to Dr. Lee and executed by him on August 8, 2000, one week after Dr. Lee's employment with Microsoft became effective and commenced. See id. at ¶¶ 15, 20 and Exhibit 28.

The terms of the Agreement were not negotiated, nor was any new consideration offered or exchanged. All of the employment terms had already been agreed to and memorialized and executed in Mr. Muglia's August 3 offer letter and Dr. Lee's acceptance of it. See id. at ¶¶ 18, 20 and Exhibits 26 and 28.

## III. ARGUMENT

In order to obtain injunctive relief, Microsoft must show, among other things, (1) that it has a clear legal or equitable right, (2) that it has a well-grounded fear of immediate invasion of that right, and (3) that an invasion of the right is either resulting in or will result in actual and substantial injury. See Kucera v. Dep't of Transp., 140 Wn.2d 200, 209, 995 P.2d

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000


63 (2000). If Microsoft "fails to establish any one of these requirements, the requested relief must be denied." Id. (emphasis added).

Here, Microsoft fails to establish that it has an enforceable right because (a) the non-compete provision upon which it relies was executed after Dr. Lee was hired and after he actually commenced work, but is not supported by independent, additional consideration and is, therefore, invalid and unenforceable; and (b) in any event, where employment is at-will, the equitable remedy of injunctive relief is not available to enforce a non-compete agreement. The employer's remedy, if any, is an action for damages.

Accordingly, Microsoft's request for injunctive relief must be denied for these reasons, as well as those set forth in Google's Opposition.

**A. The Agreement is invalid and unenforceable because it was executed after Dr. Lee was hired and after he actually commenced work, but it is not supported by independent, additional consideration.**

It is well established in Washington that an agreement not to compete must be supported by consideration. See, e.g., Pollard, 152 Wn. 2d at 833-34. Consideration is a bargained for exchange of promises. Id. at 836.

A non-compete agreement that is entered into after the employee has been hired must be supported by independent, additional consideration. See id. at 834. See also Schneller, 176 Wash. at 118-19. "Independent, additional, consideration is required for the valid formation of a modification or subsequent agreement." Pollard, 152 Wn.2d at 834. "There is no consideration when 'one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract.'" Id. (quoting Banchero, 83 Wn.2d at 273). Rather, independent, additional consideration "involves new promises or obligations previously not required of the parties." Id. (emphasis added).

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

In Pollard, the Court held that a non-compete agreement that was entered after employment had commenced and that was not supported by additional consideration was invalid and unenforceable. See id. at 836. In determining that additional consideration was not given, the Pollard court "compared the status of the employer" before and after the non-compete agreement. Id. The comparison demonstrated that the employer "did not incur additional duties or obligations from the noncompete agreement." Id. "Prior to execution of the 2002 noncompete agreement, [the] Employee was an 'at will' Employee." Id. "After Employee executed the noncompete agreement, he still remained an 'at will' employee terminable at Employer's pleasure." Id. Accordingly, the Court expressly held that continued employment after execution of the non-compete "did not serve as consideration by Employer in exchange for Employee's promise not to compete." Id.

Similarly, in Schneller, the Court held that a non-compete entered into after the employee was "already employed" was invalid and unenforceable. Although the agreement expressly stated that it was made "in consideration of such employment," id. at 116, because it "did not promise any additional employment" and nothing further in the way of wages, id. at 118 (emphasis added), the Schneller court found that it was not a contract of employment, "but rather an ancillary unilateral engagement" on the part of the employee that was "wholly lacking in consideration" from the employer to the employee. Id.

Here, like Pollard and Schneller, the Agreement was entered into after Dr. Lee had been hired, after the terms and conditions of his employment had been agreed to - and confirmed in writing, after the effective start date of his employment, and after he actually commenced work. Like the employers in Pollard and Schneller, Microsoft gave no independent, additional consideration in exchange for Dr. Lee's executing the Agreement.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The facts demonstrate that Bob Muglia communicated Microsoft's offer, including terms and conditions, to Dr. Lee in July of 2000. Dr. Lee accepted Microsoft's offer in July 2000 and, thereafter, moved with his family to the United States. As confirmed in Mr. Muglia's letter of August 3, 2000, Dr. Lee's employment with Microsoft began effective August 1, 2000. Dr. Lee in fact commenced work for Microsoft on that date, August 1, 2000. Dr. Lee physically arrived at the Redmond campus, and began work there, on August 7, 2000. On that same day, August 7, 2000, he executed a copy of Mr. Muglia's letter memorializing the terms of employment. The non-compete Agreement was only presented to him and executed thereafter, on August 8, 2000, along with several other administrative documents from Microsoft's Human Resources department.

It is clear from the terms of the Agreement itself that it offers no additional consideration other than what Microsoft had already offered. Indeed, the Agreement obligates Microsoft to nothing at all. The Agreement recites: "In consideration of the employment offered to me by Microsoft . . . and the compensation now and hereinafter paid to me, I agree as follows:…." Following this recital are 14 paragraphs of conditions that obligate only Dr. Lee. The Agreement is not even executed by Microsoft; only by Dr. Lee.

Thus, the Agreement by its express terms makes no actual, much less enforceable, promise of employment or compensation on the part of Microsoft. Rather, the Agreement references only an offer of employment and compensation outside the Agreement – in this case, employment and compensation that had already been offered, accepted and commenced. In short, not only does the Agreement promise no new, independent, additional consideration,

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

it in fact promises nothing and obligates Microsoft to nothing.[2] As in Schneller, because the Agreement in fact obligates only Dr. Lee, it is "an ancillary unilateral engagement" and is, therefore, "wholly lacking in consideration" from Microsoft. See Schneller, 176 Wash. at 119-120. Stated differently, it is a modification or a subsequent agreement without any new, independent, additional obligation on the part of Microsoft. See Pollard, 152 Wn.2d at 834. A comparison of Microsoft's status before and after the Agreement demonstrates that Microsoft incurred no additional obligations. See Pollard, 152 Wn.2d at 834.

To the extent Microsoft seeks to rely on Knight, Vale and Gregory v. McDaniel, 37 Wn. App. 366, 368-69, 680 P.2d 448 (1984), for the proposition that Dr. Lee's "continued employment" at Microsoft constituted sufficient consideration for the Agreement, any such contention must be rejected. Critically, in Knight, the employees agreed to the non-compete on the first day of work, before employment had actually commenced. See 37 Wn. App. at 367. Here, in contrast, the Agreement was not executed until after Dr. Lee had been hired and employment had already commenced. This is precisely the basis upon which the Supreme Court, in Pollard, distinguished Knight. See Pollard, 152 Wn.2d at 838 ("Unlike Knight, the Employee here did not sign the noncompete agreement before the very first day of work.") (emphasis added).

While Microsoft undoubtedly will attempt to distinguish Pollard on the basis that the employee in Pollard had been employed for five years prior to execution of the noncompete, see 152 Wn.2d at 838, the specific amount of time that the employee has already been employed is immaterial. The material question is only whether the noncompete is agreed to before or after employment is commenced. In Schneller, for example, employment was "by

---

[2] With the exception of attorney's fees if Dr. Lee prevails in defending against Microsoft's suit.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the week," but the date of the noncompete "was in the middle of the week." 176 Wash. at 118. The dispositive question was not how long the employee had been employed, only that the employee "was already employed." Id. (emphasis added). Here, unlike Knight, and like Schneller and Pollard, Dr. Lee undeniably was already employed and work had already commenced before the noncompete was executed.

The dispositive distinction between whether a noncompete is entered at the time of employment or after it, as opposed to inquiring into the length of employment, is not merely technical or academic. As the controlling authority makes clear, the critical question is whether the employer has actually given consideration for the non-compete. The original consideration of employment attaches and is sufficient, if the non-compete is entered into at the time of employment. See Pollard, 152 Wn.2d at 834. However, if the non-compete is entered into after the employee is already employed, the agreement must be supported by independent, additional consideration. See id; Schneller, 176 Wash. at 118-19. There is nothing "additional" about continued employment if it has already been offer and accepted and has already commenced.

The foregoing is consistent with fundamental principles of contract. See Banchero, 83 Wn.2d at 273. If the parties have an existing contractual relationship, then any modification or subsequent agreement must be supported by independent consideration. See id. The original consideration does not attach to the modification or subsequent agreement. Id. A modification or subsequent agreement "is not supported by consideration if one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract." Id. See Pollard, 152 Wn.2d at 834 (citing Banchero with approval).

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Under the applicable principles, even assuming, under Knight, that "continued employment" can in certain circumstances constitute consideration for a non-compete after commencement of employment, that is not the case here. The analysis in Pollard makes crystal clear that the critical question to determining whether continued employment constitutes consideration is to compare the employer's status before and after the non-compete. See 152 Wn.2d at 836. In Pollard, the Court expressly held that, because the employee was an at-will employee before the non-compete was executed, and remained so after execution, "continued employment in this case did not serve as consideration by [the] Employer in exchange for Employee's promise not to compete." Id.

The exact same analysis holds true here. Mr. Muglia's letter of August 3, 2000, unequivocally states that Dr. Lee's employment with Microsoft is terminable at-will, and that the at-will nature of the employment cannot be modified or changed except by a written employment contract signed by an officer of Microsoft. See Lee Decl. at Exhibit 26. The non-compete Agreement makes no attempt to change this status, and in any event it is not signed by Microsoft at all. See Lee Decl. at Exhibit 28. As in Pollard, therefore, Dr. Lee was an at-will employee both before and after he executed the Agreement. Dr. Lee's continued employment, therefore, did not constitute consideration for the non-compete. Pollard is indistinguishable from this case; its analysis controls.

In sum, the Agreement upon which Microsoft relies was executed after Dr. Lee had accepted Microsoft's offer, after the terms and conditions of employment had been memorialized and accepted in writing, after employment became effective, and after Dr. Lee actually commenced work. However, Microsoft gave no independent, additional consideration beyond what it had already agreed to. Unlike Knight, the Agreement in this

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

case was not entered into at the time of employment. In any event, Dr. Lee's continued employment with Microsoft remained terminable at-will before and after execution of the Agreement. Thus, under Pollard, Dr. Lee's continued employment did not constitute consideration in exchange for the Agreement. The Agreement is, therefore, invalid and unenforceable. See Pollard, 152 Wn.2d at 834, 836; Schneller, 176 Wash. at 118-19.

The ultimate outcome here is not only compelled by the controlling law, it is dictated by basic fairness. If a company like Microsoft intends to seek enforcement of non-compete agreements as broadly and aggressively as it is doing here, it should not treat such agreements so casually until it is time to enforce them. Rather, it should fully apprise its employees upfront in order to allow negotiation and payment of the appropriate, and necessary, consideration.

**B. Microsoft's request for injunctive relief must be denied because, as in this case, where employment is at-will, there is insufficient mutuality of obligation for equity to intervene, and injunctive relief is not an available remedy.**

Even if the Agreement were validly entered into and supported by consideration, it cannot provide the basis for injunctive relief. Dr. Lee's employment with Microsoft was terminable at-will. Where employment is at-will, injunctive relief is not an available remedy to enforce a non-compete agreement. See Schneller, 176 Wash. at 119-120.

In Schneller, the Washington Supreme Court expressly distinguished between the existence of consideration sufficient to enforce a non-compete at law (i.e., to recover damages), and the existence of sufficient "mutuality of obligation" to sustain an action for equitable relief. See Schneller, 176 Wash. at 118-120. The Schneller court held that where employment is at-will, there is insufficient mutuality of obligation for equity to intervene, and injunctive relief is not an available remedy. Id. at 119-120. Thus, the Schneller court stated

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

that even assuming the non-compete at issue was supported by consideration so as to make it enforceable in an action for damages, because the employment was terminable at-will, the employer was "not [] entitled to injunctive relief." 176 Wash. at 119.

As the Schneller court recognized, there is a significant difference in the nature of equitable relief, as compared to legal relief, that justifies distinguishing between them. See 176 Wash. at 119-120. That distinction is as true today as it was at the time of the Schneller court's decision:

> An injunction is distinctly an equitable remedy and is frequently termed 'the strong arm of equity,' or a 'transcendent or extraordinary remedy,' and is a remedy which should not be lightly indulged in, but should be used sparingly and only in a clear and plain case.

Kucera v. Dep't. of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000) (some internal quotes and citation omitted).

Similarly, covenants not to compete are disfavored in the law. If the extraordinary remedy of injunctive relief is to issue, particularly if it issues in order to enforce a non-compete, consideration that consists of more than a promise terminable at-will is justifiably required.

Because Dr. Lee's employment with Microsoft was at-will, even if the Agreement were validly entered into, equitable injunctive relief is not an available remedy. See Schneller, 176 Wash. at 119.

//

//

//

//

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Case5:05-cv-03095-RMW Document27-7 Filed09/23/05 Page14 of 15

IV. CONCLUSION

For the foregoing reasons, as well as for the reasons set forth in Google's Opposition, Microsoft's request for injunctive relief should be denied.

DATED this 30th day of August, 2005.

BYRNES & KELLER LLP

By ______________________________
Bradley S. Keller, WSBA #10665
Jofrey M. McWilliam, WSBA #28441
Attorneys for Defendant
Kai-Fu Lee

KAI-FU LEE'S OPPOSITION TO MICROSOFT'S MOTION FOR PRELIMINARY INJUNCTION - 14

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Case5:05-cv-03095-RMW Document27-7 Filed09/23/05 Page15 of 15

CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 30th day of August, 2005, a true copy of the foregoing pleading was served on each and every attorney of record herein via hand delivery:

Michael W. Droke
Dorsey & Whitney LLP
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101-4010

Jeffrey C. Johnson
Preston Gates & Ellis LLP
925 Fourth Avenue
Suite 2900
Seattle, WA 98104-1158

KAI-FU LEE'S OPPOSITION TO MICROSOFT'S MOTION FOR PRELIMINARY INJUNCTION - 15

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000