1        Judge Steven González

2

3

4

5

6

7

8               IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                       IN AND FOR THE COUNTY OF KING
9

10    MICROSOFT CORPORATION, a
      Washington corporation,
11
                                Plaintiff,        No. 05-2-23561-6 SEA
12
                    \
13
      KAI-FU LEE and GOOGLE, INC., a              PRELIMINARY INJUNCTION
14    Delaware corporation,

15                              Defendants.

16

17        THIS MATTER came on for hearing on Microsoft Corporation's ("Microsoft")

18    Motion for Preliminary Injunction. Defendants Google Inc. ("Google") and Dr. Kai-Fu

19    Lee ("Dr. Lee") also filed a motion requesting that the Temporary Restraining Order

20    previously issued on July 28, 2005 ("TRO"), be dissolved. This case involves allegations

21    by Microsoft that certain aspects of Dr. Lee's employment with Google violate the non-

22    competition clause in a Microsoft Employment Agreement that Dr. Lee signed on August

23    8, 2000 (the "Agreement"). It is well established in Washington that covenants not to

24    compete upon termination of employment are enforceable if they are reasonable. *Knight,*

25    *Vale & Gregory v. McDaniel*, 37 Wn.App. 366, 368 (1984).

COPY

Since the Court issued the TRO, the Court has: (1) further reviewed the law on the enforceability of non-compete agreements; (2) received and reviewed extensive additional briefing and documentary evidentiary submissions by all parties; and (3) presided at a two day hearing on September 6-7, 2005, consisting of live and deposition testimony, additional documentary evidence, and additional oral argument. The Court considered the following written submissions, including attachments, and witness testimony, presented live or via deposition transcript and video:

### Pleadings re Motion for Temporary Restraining Order

1. Microsoft's Motion for Temporary Restraining Order and Order to Show Cause, dated 7/25/05

2. Declaration of Jeffrey Johnson in Support of Plaintiff Microsoft Corporation's Motion for Temporary Restraining Order, dated 7/25/05

3. Declaration of David Dawson (in Support of Plaintiff Microsoft Corporation's Motion for Temporary Restraining Order), dated 7/22/05

4. Declaration of Sin Lew, dated 7/20/05

5. Declaration of Marla Mellies, dated 7/25/05

6. Declaration of Craig Mundie, dated 7/25/05

7. Declaration of Christopher Payne, dated 7/25/05

8. Declaration of Eric Rudder, dated 7/25/05

9. Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order, dated 7/26/05

10. Declaration of Michael W. Droke, dated 7/26/05

11. Declaration of Alan Eustace, dated 7/26/05

12. Declaration of Kai-Fu Lee, dated 7/26/05

13. Supplemental Declaration of Kai-Fu Lee, dated 7/26/05

14. Microsoft's Reply Brief in Support of Motion for Temporary Restraining Order, dated 7/27/05

15. Order Granting in Part Plaintiff's Motion for Temporary Restraining Order, dated 7/28/05

16. Declaration of Erica Couch Regarding Documents Used in TRO Hearing, dated 7/28/05

17. Declaration of Jeffrey Johnson Regarding Documents Used in TRO Hearing, dated 7/28/05

**Pleadings re Motion to Dissolve or Modify Temporary Restraining Order**

1. Notice For Hearing, Defendant's Motion to Dissolve or Modify Temporary Restraining Order, dated 8/31/05

2. Defendants' Motion to Dissolve or Modify Temporary Restraining Order, dated 8/31/05

3. Microsoft's Opposition to Motion to Dissolve or Modify Temporary Restraining Order, dated 9/06/05

**Pleadings re Preliminary Injunction**

1. Microsoft's Motion for Preliminary Injunction, dated 8/22/05

2. Declaration of Jeffrey Johnson in Support of Motion for Preliminary Injunction, dated 8/22/05

3.     Declaration of Michael Ensing in Support of Microsoft's Motion for Preliminary Injunction, dated 8/22/05

4.     Kai-Fu Lee's Opposition to Microsoft's Motion for Preliminary Injunction, dated 8/30/05

5.     Google Inc.'s Opposition to Microsoft's Motion for Preliminary Injunction, dated 8/30/05

6.     Declaration of Ragesh Tangri in Support of Opposition to Motion for Preliminary Injunction, dated 8/30/05

7.     Declaration of Mark Lucovsky, dated 8/27/05

8.     Declaration of Alan Eustace in Opposition to Microsoft's Motion for Preliminary Injunction, dated 8/30/05

9.     Praecipe and Request for Substitution of Documents (attaching revised Declaration of Kai-Fu Lee in Support of Opposition to Motion for Preliminary Injunction), dated 9/01/05

10.     Declaration of Xiaoping Xu in Support of Opposition to Motion for Preliminary Injunction, dated 8/30/05

11.     Errata Sheet to Google's Opposition to Microsoft's Motion for Preliminary Injunction, dated 9/01/05

12.     Microsoft Corporation's Reply to Kai-Fu Lee's Opposition to Microsoft's Motion for Preliminary Injunction, dated 9/02/05

13.     Microsoft's Reply to Google's Opposition to Motion for Preliminary Injunction, dated 9/02/05

14. Second Declaration of Jeffrey Johnson in Support of Microsoft's Reply Brief to Motion for Preliminary Injunction, dated 9/02/05

15. Declaration of Charyn Lhyle, dated 9/01/05

16. Declaration of Brian Schipper, dated 9/02/05

17. Praecipe – Exhibit 135 to The Second Declaration of Jeffrey Johnson in Support Microsoft's Reply Brief to Motion for Preliminary Injunction, dated 9/06/05

18. Praecipe – Second Declaration of Jeffrey Johnson in Support of Microsoft's Reply Brief to Motion for Preliminary Injunction – Exhibits 191-193, dated 9/06/05

19. Praecipe – Second Declaration of Jeffrey Johnson in Support of Microsoft's Reply Brief to Motion for Preliminary Injunction – Exhibits 194-196, dated 9/06/05

20. Exhibit 135 to Declaration of Jeffrey Johnson in Support of Microsoft's Motion for Preliminary Injunction

21. Declaration of Bradley S. Keller re Supplemental Exhibits Submitted for Consideration at Preliminary Injunction Hearing, dated 9/07/05

22. Declaration of Michael Droke Authenticating Documents Submitted at Preliminary Injunction Hearing, dated 9/07/05

**Witnesses Who Testified at Preliminary Injunction Hearing**

1. Dr. Kai-Fu Lee (live)

2. Dr. Alan Eustace (live)

3. Steven Ballmer (via deposition excerpts)

4. Sergey Brin (via deposition excerpts)

5. William H. Gates (via deposition excerpts)

6. Craig Mundie (via deposition excerpts)

7.      Eric Schmidt (via deposition excerpts)

8       Ya-Qin Zhang (via deposition excerpts)

The relief Microsoft requests at this stage mirrors in many respects the relief it seeks at trial. Therefore, to prevail in its request for a preliminary injunction, Microsoft must show that there is a substantial likelihood that it will prevail at trial. Specifically, Microsoft has the burden to demonstrate that (1) it has a clear legal or equitable right, (2) it has a well-grounded fear of immediate invasion of that right by Defendants, and (3) Defendants' actions are resulting in or will result in actual and substantial injury to Microsoft. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209 (2000).

Since the Court issued the TRO, Google and Dr. Lee have, both in writing and in open court, offered to stipulate (the "Stipulation") that, pending trial, Dr. Lee will not engage in certain activities. Microsoft declined to join the Stipulation.

Pending trial in this matter, Google and Dr. Lee contend that Dr. Lee should be able to employ his general knowledge, personal attributes, general reputation and skills to help Google set up and staff a product research and development facility in China, by engaging in activities consisting of:

- establishing facilities
- hiring engineers and administrative staff
- interacting with public officials
- meeting with university administrators and professors
- offering general, non-technical advice to Google about how to do business in China

Microsoft contends that if Dr. Lee were to engage in the foregoing activities in China (hereinafter "Establishing and Staffing a Google Development Facility in China") this would violate paragraph 9 of the Agreement. Microsoft contends that Dr. Lee lost his

objectivity and began using Microsoft's proprietary information for his own benefit and
for the benefit of Google even before he left Microsoft. In closing argument on
September 7, 2005, before this Court, Microsoft asserted that Dr. Lee was the face of
Microsoft in China until his separation from Microsoft and, in light of the Agreement, he
should not be the same for Google.

The Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1.     Dr. Lee executed the Agreement on August 8, 2000. A question remains for trial
whether independent consideration exists to support the Agreement. *See Labriola v.
Pollard Group, Inc.*, 152 Wn.2d 828, 834 (2004); *Knight, Vale & Gregory v. McDaniel*,
37 Wn.App. 366, 368 (1984); *Schneller v. Hayes*, 176 Wash. 115, 118-119 (1934).

2.     The Agreement contains the following provision at paragraph 9:

> **9. Non-Competition and Non-Solicitation.** While employed at
> Microsoft **and for a period of one year thereafter,** I will not (a)
> accept employment or engage in activities competitive with
> products, services or projects (including actual or demonstrably
> anticipated research or development) on which I worked or about
> which I learned confidential or proprietary information or trade
> secrets while employed at Microsoft; (b) render services to any
> client or customer of Microsoft for which I performed services
> during the twelve months prior to leaving Microsoft's employ; (c)
> induce, attempt to induce, or assist another to induce or attempt to
> induce any person to terminate his employment with Microsoft or
> to work for me of [sic] for any other person or entity. If during or
> after my employment with Microsoft I seek to work elsewhere, I
> will provide a copy of this Agreement to any persons or entities by
> whom I am seeking to be hired before accepting employment with
> or engagement by them.

3.     The Agreement does not confer to Microsoft any right to control Dr. Lee's public
image or personal relationships.

4.     In June of 2005, Dr. Lee misled Microsoft about his intention to return to
Microsoft following his sabbatical and he continued to have access to Microsoft's

1   proprietary information after he decided to leave Microsoft to join one of its competitors

2   without informing Microsoft. Dr. Lee began assisting Google while he was still employed

3   at Microsoft. Dr. Lee confused the difference between the discretion given him to

4   disclose Microsoft's confidential information for the benefit of Microsoft and disclosing

5   Microsoft's confidential information for his own benefit or the benefit of another.

6   5.     During his employment with Microsoft, Dr. Lee worked on products, services or

7   projects (including actual or demonstrably anticipated research or development) and/or

8   received Microsoft confidential, proprietary or trade secret information in the areas of

9   computer search, including but not limited to, internet search, desktop search and mobile

10  search, and natural language processing and speech technologies.

11  6.     During his employment with Microsoft, Dr. Lee received Microsoft confidential,

12  proprietary or trade secret information with respect to Microsoft's Research and

13  Development organization and activities in China, and Microsoft's recruiting strategies

14  and efforts for Microsoft's research and development facilities in China, including

15  personnel plans, budget, staffing, and compensation issues.

16  7.     During his employment with Microsoft, Dr. Lee received Microsoft confidential,

17  proprietary or trade secret information with respect to Microsoft's government relations

18  strategies and activities in China.

19  8.     During his employment with Microsoft, Dr. Lee prepared and provided to senior

20  executives at Microsoft strategic plans and recommendations for Microsoft's general

21  business activities in China and for reorganizing Microsoft's research and development

22  facilities in China.

23  9      During his employment with Microsoft, Dr. Lee worked on products, services or

24  projects (including actual or demonstrably anticipated research or development) and/or

25  received Microsoft confidential, proprietary or trade secret information with respect to

1    Microsoft's competitive strategies and business plans to compete with Google generally

2    and in China.

3    10.    Dr. Lee commenced employment with Google on July 19, 2005, as Vice President

4    of Engineering and President of Google China.

5    11.    Dr. Lee's job responsibilities as Vice President of Engineering and President of

6    Google China and the activities he engaged in with respect to that role on behalf of

7    Google prior to entry of the Temporary Restraining Order of July 28, 2005, constitute the

8    basis for Microsoft's well-founded fear that Dr. Lee violated or threatens to violate the

9    terms of paragraph 9 of the Agreement.

10    12.    However, Google's use of Dr. Lee to engage in recruiting activities relating to

11    Google's planned research and development facility in China pending trial, including

12    establishing facilities, hiring engineers and administrative staff, interacting with public

13    officials regarding the facilities and recruitment, meeting with university administrators

14    and professors regarding recruitment, and offering general, non-technical advice to

15    Google about doing business in China, does not violate the Agreement, provided Dr. Lee

16    does not recruit from Microsoft or use any confidential information from Microsoft.

17    13.    Google and Dr. Lee have entered into an indemnity agreement which

18    provides that Dr. Lee will not suffer any financial loss or loss of employment for

19    one year as a result of any injunction issued by this Court.

20    **CONCLUSIONS OF LAW**

21    1.    If independent consideration is established at trial, the Agreement provides

22    Microsoft with a clear legal or equitable right enforceable under Washington law.  At

23    issue at trial is the scope of the rights under the Agreement.

24    2.    Paragraph 9 of the Agreement is reasonably necessary to protect Microsoft's

25    legitimate business interests.

3       If narrowly construed, the restraints on Dr. Lee's future employment contained in Paragraph 9 of the Agreement are no greater than reasonably necessary to protect Microsoft's legitimate business interests.

4       If narrowly construed, Paragraph 9 of the Agreement imposes no undue hardship on Dr. Lee or the public.

5       Defendants' Stipulation is not a substitute for Plaintiff's request for injunctive relief, especially where, as here, the Stipulation was offered after the suit began and the Court issued the TRO. *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 82 Wn 2d 265, 272 (1973)

6       Except as to certain activities in China, the Court is satisfied that Microsoft has established a clear legal or equitable right, a well-grounded fear of immediate invasion of that right, that certain of the acts complained of prior to the Stipulation will result in actual and substantial injury to Microsoft, that the balance of harm weighs in Microsoft's favor, and that the equities dictate that a preliminary injunction order should be entered despite the Stipulation.

7       Microsoft has not sufficiently shown that it has a clear legal or equitable right to enjoin Dr. Lee, pending trial, from Establishing and Staffing a Google Development Facility in China.

8       Dr. Lee's general activities related to China, undertaken while at Microsoft since August 8, 2000, are not a "product" or "service" within the meaning of the Agreement. Microsoft claims that such activities constitute either (1) a "project" on which Dr. Lee worked, or (2) a "project" about which Dr. Lee learned confidential or proprietary information or trade secrets while employed at Microsoft. In either case, it must have been a "project" during the time period covered by the non-compete at issue. That Dr. Lee in 1998-1999 established and recruited personnel for Microsoft Research China (now called Microsoft Research Asia), a Microsoft research facility in China, is not relevant to

the construction of the Agreement. Prior to August 2000, Dr. Lee was employed by a
separate Microsoft subsidiary and he was subject to a different non-compete provision that
expired by its terms, at the latest one year after he began employment with Microsoft
Corporation (Redmond) in August 2000, and under which Microsoft has not sought relief.
The Agreement, if enforceable regarding work in China, addresses subsequent specific
"projects."

9.      The general activities Dr. Lee has engaged in for Microsoft since August 2000 that
assisted Microsoft's recruiting efforts in China are not a "project" within the meaning of
the Agreement. Due to public policy implications, any broader interpretation of "projects"
to include such activities would raise significant questions about the enforceability of this
portion of the Agreement. The reputation Dr. Lee has built among students in China and
his relationships with academicians in China are the result of his work and teachings both
before and during his employment at Microsoft, as well as his personal outreach efforts.
These relationships are not "peculiar to Microsoft" and are not the type of interests that
Washington courts have typically included when enforcing covenants not to compete.
*See, generally Perry v. Moran*, 109 Wn.2d 691, 702 (1987). Washington courts must
exercise caution before entering an order that would construe as proprietary or peculiar to
any U.S. multi national corporation relationships with foreign students, foreign
universities, or foreign public officials.

        Now, therefore,

        **IT IS HEREBY ORDERED** that, pending trial of this matter (even if continued),
Dr. Lee and Google are hereby preliminarily enjoined as follows:

1       Dr. Lee is enjoined from accepting employment competitive with or engaging in
any activities competitive with any product, service or project (including actual or
demonstrably anticipated research or development) on which he worked or about which

he learned confidential or proprietary information or trade secrets while employed at Microsoft, including but not limited to activities related to:

    (a)    computer search technologies, including but not limited to internet search, desktop search, or mobile search;

    (b)    natural language processing or speech technologies; and

    (c)    participation in setting the budget or compensation levels and defining the research and development to be undertaken at Google's planned research and development facility in China.

2    Google is enjoined from employing Dr. Lee for or otherwise engaging him in any activities competitive with any product, service or project (including actual or demonstrably anticipated research or development) on which he worked or about which he learned confidential, proprietary or trade secrets while employed at Microsoft, including activities related to:

    (a)    computer search technologies, including but not limited to internet search, desktop search, or mobile search;

    (b)    natural language processing or speech technologies;

    (c)    participation in setting the budget or compensation levels and defining the research and development to be undertaken at Google's planned research and development facility in China.

3.    Dr. Lee and Google, or any person or entity acting in concert with either of them, are enjoined from disclosing or misappropriating for their own use or benefit, any trade secrets or other confidential or proprietary information of Microsoft obtained in connection with Dr. Lee's work for Microsoft. "Confidential or proprietary information or trade secrets" means all data and information in whatever form, tangible or intangible, that is not generally known to the public and that relates to the business, technology, practices, products, marketing, sales, services, finances, or legal affairs of Microsoft, including without limitation: information about actual or prospective customers, suppliers and business partners; business, sales, marketing, compensation, recruiting, technical, financial and legal plans, proposals and projections; concepts, techniques, processes,

methods, systems, designs, programs, code, formulas, research, experimental work and work in progress.

4     Dr. Lee is enjoined from soliciting, encouraging, or attempting to induce employees of Microsoft or its subsidiaries to terminate their employment to work for any other entity, including Google.

5     The parties are enjoined from destroying any documents or files of any kind, whether in written or electronic form, that relate in any way to Microsoft and Google's employment of Dr. Lee.

**IT IS FURTHER ORDERED** that Microsoft shall maintain the current injunction bond in the amount of $1,000,000.00 for the payment of Google and Dr. Lee's costs and damages that may be incurred in the event they are found to be wrongfully enjoined or restrained by this Order.

The TRO is superseded by this Preliminary Injunction. Defendants' motion to dissolve the TRO is moot.

DONE IN OPEN COURT this _13th_ day of September, 2005

Judge Steven González
King County Superior Court Judge

PRELIMINARY INJUNCTION - 13